No. 24-2263
_____

# In the United States Court of Appeals for the Eighth Circuit
_____

IOWA MIGRANT MOVEMENT FOR JUSTICE, *et al.*,
*Plaintiffs - Appellees*,

v.

BRENNA BIRD, in her official capacity as Attorney General of Iowa,
*Defendant – Appellant*,

KIMBERLY GRAHAM, in her official capacity as Polk County Attorney, and
ZACH HERRMANN, in his official capacity as Clayton County Attorney,
*Defendants*.

_____

On Appeal from the United States District Court for the Southern District of Iowa
Case No. 4:24-cv-00161-SHL-SBJ, Honorable Stephen H. Locher, District Judge
_____

## BRIEF OF PLAINTIFFS - APPELLEES
_____

Rita Bettis Austen
Shefali Aurora
Thomas Story
ACLU of Iowa Foundation Inc.
505 Fifth Avenue, Ste. 808
Des Moines, IA 50309-2317
Phone: (515) 243-3988
Fax: (515) 243-8506
rita.bettis@aclu-ia.org
shefali.aurora@aclu-ia.org
thomas.story@aclu-ia.org

Emma Winger
Suchita Mathur
Michelle Lapointe
American Immigration Council
2001 L Street NW, Suite 500
Washington, DC 20036
Phone: (202) 507-7512
ewinger@immcouncil.org
smathur@immcouncil.org
mlapointe@immcouncil.org

*Counsel for Plaintiffs – Appellees*
(Additional counsel listed on signature block)

i

## SUMMARY OF THE CASE AND STATEMENT ON ORAL ARGUMENT

Iowa Senate File 2340 (SF2340) creates a system in which the *state*—rather than the federal government—arrests, detains, imprisons, and deports noncitizens in Iowa who reentered the United States after a previous removal or exclusion. The law makes no exception for people who reentered with federal consent, who later gained lawful immigration status, or who are in the process of obtaining immigration status.

Plaintiffs Jane Doe and Elizabeth Roe are noncitizen Iowa residents who were previously deported and thus face arrest, prosecution, imprisonment, and removal under SF2340. Plaintiff Iowa Migrant Movement for Justice (Iowa MMJ) is composed of members who likewise would be subject to this new state-directed immigration enforcement regime.

The district court preliminarily enjoined enforcement of SF2340, concluding that the Iowa law is field and conflict preempted under *Arizona v. United States*, 567 U.S. 387 (2012). This Court should affirm that ruling.

Defendants have requested 15 minutes for oral argument. Plaintiffs likewise 15 minutes for argument.

Appellate Case: 24-2263     Page: 2     Date Filed: 08/20/2024 Entry ID: 5426310

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eighth Circuit Rule 26.1A, Plaintiff-Appellee Iowa Migrant Movement for Justice states that it has no parent corporation and that no publicly held corporation owns more than ten percent of its stock.

August 20, 2024

*/s/ Emma Winger*
Emma Winger
American Immigration Council
2001 L Street NW, Suite 500
Washington, DC 20036
Phone: (202) 507-7512
ewinger@immcouncil.org

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE CASE AND STATEMENT ON ORAL ARGUMENT ........II

CORPORATE DISCLOSURE STATEMENT .......................................III

TABLE OF CONTENTS ..................................................... IV

TABLE OF AUTHORITIES.................................................. VI

STATEMENT OF JURISDICTION ...............................................1

STATEMENT OF ISSUES FOR REVIEW....................................1

INTRODUCTION ................................................................2

STATEMENT OF THE CASE................................................4

I.   THE FEDERAL GOVERNMENT'S EXCLUSIVE AUTHORITY TO
     REGULATE ENTRY AND REMOVAL ...........................................4

II.  SF2340 REGULATES ENTRY AND REMOVAL ...........................8

III. PARTIES AND PROCEDURAL HISTORY .................................10

SUMMARY OF THE ARGUMENT ..............................................12

ARGUMENT ................................................................14

I.   STANDARD OF REVIEW .................................................14

II.  PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS....................14

    A.   Plaintiffs Have Standing ..........................................14

       1.  Plaintiffs Doe and Roe and Iowa MMJ, On Behalf of Its Members, Have
           Standing .......................................................15

       2.  Iowa MMJ Has Standing..........................................22

       3.  Plaintiffs Have Standing to Challenge Section 4 ...................24

    B.   Plaintiffs Have a Cause of Action...................................25

    C.   SF2340 Is Preempted ...............................................27

       1.  SF2340 Intrudes on the Federal Field of Entry and Removal ..................27

       2.  SF2340 Conflicts with the Federal Scheme.............................37

    D.   Section 4 Cannot Be Severed ......................................50

iv

III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN
    WEIGHING THE EQUITIES ............................................................................51

    A.    SF2340 Will Irreparably Harm Plaintiffs and the Public .........................51

    B.    Iowa Will Not Be Similarly Harmed ........................................................55

CONCLUSION .................................................................................................................55

CERTIFICATE OF COMPLIANCE .............................................................................58

CERTIFICATE OF SERVICE .......................................................................................59

Appellate Case: 24-2263    Page: 5    Date Filed: 08/20/2024 Entry ID: 5426310

# TABLE OF AUTHORITIES

**Page**

**Cases**

*281 Care Comm. v. Arneson*, 638 F.3d 621 (8th Cir. 2011) .....................................25

*Alexis Bailly Vineyard, Inc. v. Harrington*, 931 F.3d 774 (8th Cir. 2019) .... 1, 15, 16

*Am. Dog Owners Ass'n v. City of Des Moines*, 469 N.W.2d 416 (Iowa 1991) .......51

*Animal Legal Def. Fund v. Reynolds*, 89 F.4th 1071 (8th Cir. 2024) .............. 15, 16

*Arizona v. United States*, 567 U.S. 387 (2012) ............................................... *passim*

*Arkansas Right to Life State Pol. Action Comm. v. Butler*,
   146 F.3d 558 (8th Cir. 1998) ......................................................................20

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015) ...................... 2, 25

*Bank One, Utah v. Guttau*, 190 F.3d 844 (8th Cir. 1999) ................................. 2, 55

*Book People, Inc. v. Wong*, 91 F.4th 318 (5th Cir. 2024) .......................................26

*Boos v. Barry*, 485 U.S. 312 (1988) ......................................................................46

*Chamber of Comm. v. Whiting*, 563 U.S. 582 (2011) .............................................32

*Chy Lung v. Freeman*, 92 U.S. 275 (1875) ............................................ 1, 34, 44, 50

*Citizens for Equal Protection v. Bruning*, 455 F.3d 859 (8th Cir. 2006) .................26

*Clark v. Martinez*, 543 U.S. 371 (2005) ...............................................................20

*Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981) ......................14

*De Canas v. Bica*, 424 U.S. 351 (1976) ................................................... 28, 32, 50

*Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952 (8th Cir. 2015) ....24

*Dream Defs. v. Governor of the State of Fla.*, 57 F.4th 879 (11th Cir. 2023) .........26

*Ex parte Young*, 209 U.S. 123 (1908) .......................................... 2, 3, 13, 25, 26

*FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024) ..........................22

*Fed. Election Comm'n v. Cruz*, 596 U.S. 289 (2022) .............................................24

*Fong Yue Ting v. United States*, 149 U.S. 698 (1893) ............................................36

*Ga. Latino All. for Hum. Rts. v. Governor of Ga.*,
   691 F.3d 1250 (11th Cir. 2012) ................................................................ 27, 49

*Galvan v. Press*, 347 U.S. 522 (1954) .............................................................. 28, 36

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ..........................................24

*Heartland Acad. Cmty. Church v. Waddle*, 427 F.3d 525 (8th Cir. 2005) ......... 22, 53

*Hines v. Davidowitz*, 312 U.S. 52 (1941) ........................................... 1, 28, 30, 31

*Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333 (1977) .................23

*INS v. Yueh-Shaio Yang*, 519 U.S. 26 (1996) ..........................................................8

*Jama v. Immigration and Customs Enforcement*, 543 U.S. 335 (2005) .................39

*Kansas v. Garcia*, 589 U.S. 191 (2020) .................................................................34

Appellate Case: 24-2263    Page: 6    Date Filed: 08/20/2024 Entry ID: 5426310

*Kucera v. Baldazo*, 745 N.W.2d 481 (Iowa 2008) ...................................................18

*Kuehl v. Sellner*, 887 F.3d 845 (8th Cir. 2018) ............................................... 2, 22

*League of Women Voters of Mo. V. Ashcroft*,
   336 F. Supp. 3d 998 (W.D. Mo. 2018) ...........................................................53

*Lok v. INS*, 548 F.2d 37 (2d Cir. 1977) ...............................................................44

*Lopez-Chavez v. Garland*, 991 F.3d 960 (8th Cir. 2020) ......................................5

*Lopez-Flores v. DHS*, 387 F.3d 773 (8th Cir. 2004) ............................................47

*Lozano v. City of Hazleton*, 724 F.3d 297 (3d Cir. 2013)................................ 29, 30

*Matter of Alyazji*, 25 I. & N. Dec. 397 (BIA 2011) ...............................................45

*Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520 (BIA 2011) ................................8

*Mayor v. Miln*, 36 U.S. (11 Pet.) 102 (1837) ......................................................37

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) ...................................15

*Meinders v. Dunkerton Cmty. Sch. Dist.*, 645 N.W.2d 632 (Iowa 2002)...............18

*MidAmerica Sav. Bank v. Miehe*, 438 N.W.2d 837 (Iowa 1989) ..........................18

*Moody v. NetChoice, LLC*, 144 S. Ct. 2383 (2024) .............................................49

*Nishimura Ekiu v. United States*, 142 U.S. 651 (1892) ........................................36

*Nken v. Holder*, 556 U.S. 418 (2009)..................................................................54

*Oglesby v. Lesan*, 929 F.3d 526 (8th Cir. 2019)..................................................43

*Patel v. Garland*, 596 U.S. 328 (2022) ..............................................................29

*Pharm. Rsch. & Manufacturers of Am. v. Williams*,
   64 F.4th 932 (8th Cir. 2023) ......................................................................26

*Pharm. Rsch. & Mfrs. of Am. v. Williams*, 64 F.4th 932 (8th Cir. 2023) .................2

*Picard v. Magliano*, 42 F.4th 89 (2d Cir. 2022) .................................................15

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947) .........................................27

*Rodgers v. Bryant*, 942 F.3d 451, 455 (8th Cir. 2019) .........................................21

*Sanzone v. Mercy Health*, 954 F.3d 1031 (8th Cir. 2020) ....................................23

*Sleep No. Corp. v. Young*, 33 F.4th 1012 (8th Cir. 2022)......................................14

*State v. Burns*, 988 N.W.2d 352 (Iowa) ..................................................... 2, 20, 21

*State v. Meyers*, 938 N.W.2d 205 (Iowa 2020) ....................................................21

*Stenberg v. Carhart*, 530 U.S. 914, 940-41 (2000)..............................................21

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)................................ 1, 15

*Takahashi v. Fish & Game Comm'n*, 334 U.S. 410 (1948).............................. 28, 48

*Truax v. Raich*, 239 U.S. 33 (1915) ...................................................................28

*Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694 (8th Cir. 2021)...................15

*U.S. v. Carrillo-Lopez*, 68 F.4th 1133 (9th Cir. 2023) .........................................41

*United States v. Alabama*, 691 F.3d 1269 (11th Cir. 2012)........................ 2, 28, 51

*United States v. Benito*, 2024 WL 3296944 (N.D. Miss. July 3, 2024).................55

vii

*United States v. Curtiss Wright Exp. Corp.*, 299 U.S. 304 (1936) ..........................36

*United States v. Locke*,
   529 U.S. 89 (2000) .........................................................................30

*United States v. Nunez-Hernandez*, 43 F.4th 857 (8th Cir. 2022) .........................23

*United States v. Oklahoma*,
   No. CIV-24-511-J, 2024 WL 3449197 (W.D. Okla. June 28, 2024) .............. 3, 31

*United States v. South Carolina*, 720 F.3d 518 (4th Cir. 2013) .............................54

*United States v. Stevens*, 559 U.S. 460 (2010) .................................................21

*United States v. Texas*, 97 F.4th 268 (5th Cir. 2024).................................... *passim*

*United States v. Texas*, Nos. 1:24-CV-8-DAE, 1:23-CV-DAE,
   2024 WL 861526 (W.D. Tex. Feb. 29, 2024)............................... 3, 35, 54

*United States v. Wilson*, 503 U.S. 329 (1992) .................................................19

*Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247 (2011) .................................26

*Villas at Parkside Partners v. City of Farmers Branch*,
   726 F.3d 524 (5th Cir. 2013) ............................................................6

*Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247 (2011) .........................26

*West Virginia v. Dep't of Treasury*, 59 F.4th 1124 (11th Cir. 2023) .......................16

*Whole Woman's Health v. Jackson,* 595 U.S. 30 (2021).....................................25

*Willson v. City of Bel-Nor, Mo.*, 924 F.3d 995 (8th Cir. 2019)...............................20

**Statutes**

8 U.S.C. § 1101 ............................................................................ 4, 18

8 U.S.C. § 1101(a)(15)(T) ........................................................................7

8 U.S.C. § 1101(a)(15)(U) ........................................................................7

8 U.S.C. § 1101(a)(27)(J) ........................................................................7

8 U.S.C. § 1101(g) ..............................................................................19

8 U.S.C. § 1101(g) ..............................................................................18

8 U.S.C. § 1103(a)(1), (a)(5) ..................................................................35

8 U.S.C. § 1153 ............................................................................ 5, 29

8 U.S.C. § 1157 ....................................................................................5

8 U.S.C. § 1158(d) ................................................................................7

8 U.S.C. § 1182(a) ................................................................................5

8 U.S.C. § 1182(a)(9)(A) ........................................................................5

8 U.S.C. § 1182(a)(9)(C) ........................................................................5

8 U.S.C. § 1182(d)(5)(A) ......................................................................29

8 U.S.C. § 1184 ..................................................................................29

8 U.S.C. § 1225(b) ........................................................................ 6, 7, 29

8 U.S.C. § 1225(b)(1)(A)(i) ....................................................................6

Appellate Case: 24-2263    Page: 8    Date Filed: 08/20/2024 Entry ID: 5426310

8 U.S.C. § 1225(b)(1)(B) ..............................................................7

8 U.S.C. § 1226(a)-(c) .................................................................29

8 U.S.C. § 1228(c)(5) ...................................................................33

8 U.S.C. § 1229a .................................................................6, 29, 33

8 U.S.C. § 1229a(b)(5)(C) .............................................................6

8 U.S.C. § 1229a(c)(6)-(7) .............................................................6

8 U.S.C. § 1229b(b) .......................................................................7

8 U.S.C. § 1231(a) .......................................................................18

8 U.S.C. § 1231(a)(5) .....................................................................6

8 U.S.C. § 1231(b)(3) .....................................................................7

8 U.S.C. § 1254a(a) ........................................................................7

8 U.S.C. § 1292(a)(1) .....................................................................1

8 U.S.C. § 1323 ...........................................................................29

8 U.S.C. § 1324 ...........................................................................29

8 U.S.C. § 1324a(h)(2) .................................................................32

8 U.S.C. § 1325 ...........................................................................29

8 U.S.C. § 1326 .....................................................................passim

8 U.S.C. § 1326(a)(2)(A)-(B) ..................................................5, 17

8 U.S.C. § 1326(d) .........................................................................5

8 U.S.C. § 1327 ...........................................................................29

8 U.S.C. § 1328 ...........................................................................29

8 U.S.C. § 1329 ...........................................................................29

8 U.S.C. § 1357(g)(10) .................................................................32

8 U.S.C. § 1373(c) .......................................................................45

8 U.S.C. §§ 1151–1330 ..................................................................4

28 U.S.C. § 1331 ............................................................................1

2024 Iowa Acts Senate File 2340 ............................................passim

Iowa Code § 331.756(1) ...............................................................21

Iowa Code § 718C.2(1) ..........................................16, 17, 44, 46, 48

Iowa Code § 718C.2(1)(b) ............................................................19

Iowa Code § 718C.2(2) ...................................................................9

Iowa Code § 718C.2(3) .............................................................9, 51

Iowa Code § 718C.4 ...............................................24, 34, 48, 51

Iowa Code § 718C.4(1)-(3) .......................................................9, 51

Iowa Code § 718C.4(3) .................................................................39

Iowa Code § 718C.4(4) ........................................................35, 43, 51

Iowa Code § 718C.4(5) ...................................................................9

ix

Iowa Code § 718C.5 ............................................................ 9, 39, 43, 51
Iowa Code § 718C.6 ............................................................ 10, 20, 45, 48
Iowa Code § 902.9 .............................................................. 9, 35
Iowa Code § 903.1 .............................................................. 9

**Regulations**

8 C.F.R. § 1003.1 ............................................................... 44
8 C.F.R. § 1003.25(b) .......................................................... 33
8 C.F.R. § 1241.1 .............................................................. 45
8 C.F.R. § 208.2 ............................................................... 7
8 C.F.R. § 212.2 ............................................................... 5
8 C.F.R. § 214.11(d)(9)(i) ..................................................... 7
8 C.F.R. § 214.14(c)(5)(i) ..................................................... 7
8 C.F.R. § 239.1 ............................................................... 44
8 C.F.R. § 241.15 .............................................................. 40
8 C.F.R. § 241.8 .............................................................. 6, 7

x

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331. On June 17, 2024, the district court granted Plaintiffs' motion for preliminary injunction. App.Vol.I.247; R.Doc.51, at 25. Defendant Brenna Bird timely appealed on June 19, 2024. R.Doc.52. This Court has jurisdiction to review the interlocutory order granting a preliminary injunction under 8 U.S.C. § 1292(a)(1).

## STATEMENT OF ISSUES FOR REVIEW

1. Whether Plaintiffs are likely to succeed on their claim that SF2340 is preempted, where 150 years of Supreme Court precedent prohibits states from regulating entry and removal, and where SF2340 conflicts with multiple aspects of Congress' entry and removal scheme.

   **Cases:** *Arizona v. United States*, 567 U.S. 387 (2012)

   *Chy Lung v. Freeman*, 92 U.S. 275 (1875)

   *Hines v. Davidowitz*, 312 U.S. 52 (1941)

   *United States v. Texas*, 97 F.4th 268 (5th Cir. 2024)

2. Whether Plaintiffs have standing, where Plaintiffs' and Iowa MMJ's members' conduct is at least "arguably proscribed" by SF2340 under the plain text of the statute.

   **Cases:** *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)

1

*Alexis Bailly Vineyard, Inc. v. Harrington*, 931 F.3d 774 (8th Cir. 2019)

*State v. Burns*, 988 N.W.2d 352 (Iowa)

*Kuehl v. Sellner*, 887 F.3d 845 (8th Cir. 2018)

3. Whether Plaintiffs have an equitable cause of action, where they seek declaratory and injunctive relief against state officials charged with enforcing a preempted statute.

**Cases:** *Ex parte Young,* 209 U.S. 123 (1908)

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015)

*Pharm. Rsch. & Mfrs. of Am. v. Williams*, 64 F.4th 932 (8th Cir. 2023)

4. Whether the district court acted within its discretion when it determined the remaining equitable factors favor an injunction.

**Cases:** *Bank One, Utah v. Guttau,* 190 F.3d 844 (8th Cir. 1999)

*United States v. Alabama*, 691 F.3d 1269 (11th Cir. 2012)

## INTRODUCTION

SF2340 makes it a state crime to enter the United States following removal and directs state officials to issue deportation orders. As the district court correctly held, SF2340 is both field and conflict preempted. It operates in the field of entry and removal, where the federal government's interest is dominant and its regulation pervasive. And it conflicts with federal law by overriding federal

2

discretion regarding the enforcement of immigration law, interfering with foreign relations, and upsetting Congress' complex immigration scheme in myriad ways, including by authorizing the prosecution and removal of noncitizens whom the federal government has permitted to reenter and remain in the United States. Federal courts have recently enjoined similar laws that would regulate entry and removal. *See United States v. Texas*, 97 F.4th 268 (5th Cir. 2024); *United States v. Texas*, Nos. 1:24-CV-8-DAE, 1:23-CV-DAE, 2024 WL 861526 (W.D. Tex. Feb. 29, 2024); *United States v. Oklahoma*, No. CIV-24-511-J, 2024 WL 3449197 (W.D. Okla. June 28, 2024).

Faced with a patently preempted statute, Defendant goes to great lengths to rewrite the statute's clear text: She claims that SF2340 will not effect removals, even though it requires people "to return to the foreign nation from which the[y] entered," or else face an additional 10-year penalty. And she ties herself in knots to invent an exception for people with lawful status, even though the text conspicuously omits any such exception. Defendant's refusal to defend the law as written underscores that SF2340 is indefensible.

Defendant's other arguments likewise fail. On the threshold issues, Plaintiffs Doe and Roe, and Iowa MMJ members Anna and David, easily meet the low bar for standing because they are at least arguably subject to prosecution under the plain text of the statute. Iowa MMJ similarly has standing on behalf of its

3

members. Plaintiffs also have an equitable cause of action under a straightforward application of *Ex parte Young*.

On the merits, Defendant contends the State is merely enforcing federal law. But field preemption prohibits even complementary state regulation and, in fact, SF2340 diverges from federal law in material ways. Moreover, conflicts between SF2340 and the federal scheme—which requires core immigration decisions to remain in *federal* hands—are inherent in every prosecution under the new law.

The district court also appropriately weighed the equities, finding that Iowa has no cognizable interest in enforcing a preempted law that will significantly harm Plaintiffs, the public, and the United States. The district court was well within its discretion and this Court should affirm.

## STATEMENT OF THE CASE

## I. THE FEDERAL GOVERNMENT'S EXCLUSIVE AUTHORITY TO REGULATE ENTRY AND REMOVAL

"The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012). Through the Immigration and Nationality Act (INA), Congress created a complex system to regulate entry into, authorization to remain in, and removal from the United States. *See generally,* 8 U.S.C. §§ 1101, 1151–1330.

That statutory scheme provides the federal government with a variety of specific tools to regulate immigration, including civil immigration procedures and

4

criminal charges. These tools allow federal officers to balance numerous policy goals, like discouraging irregular reentry after removal, offering pathways to return and reunite with family following a removal order, and providing for humanitarian and other protections despite prior immigration violations.

Congress has specified categories of noncitizens who may be denied admission to the United States, *see* 8 U.S.C. § 1182(a), including those who have previously been removed, *see id*. § 1182(a)(9)(A), (C). Following a removal, Congress barred noncitizens from seeking admission for a period of five, ten, or twenty years (depending on the type of removal order), but also authorized an application and adjudication process for noncitizens to seek consent to return earlier despite the prior removal. *See id.* § 1182(a)(9)(A); 8 C.F.R. § 212.2. Those who receive consent or seek admission after waiting the specified period may reenter via a host of immigrant and nonimmigrant visas and other lawful pathways. *See, e.g.,* 8 U.S.C. §§ 1153, 1157.

Unlawful reentry into the country after removal is a federal offense. 8 U.S.C. § 1326. This offense is prosecuted in federal court at the discretion of federal officials, subject to rules and exceptions specified by Congress—including an explicit exception for those who return with the consent of federal immigration authorities. *Id.* § 1326(a)(2)(A)-(B), (d). People convicted of federal illegal reentry

5

may still be eligible for immigration relief. *See, e.g.*, *Lopez-Chavez v. Garland*, 991 F.3d 960, 963, 965 & n.4 (8th Cir. 2020).

To decide whether a person who reentered unlawfully or attempted to reenter will be removed, Congress created several alternative removal procedures, including reinstatement of a removal order, 8 U.S.C. § 1231(a)(5), 8 C.F.R. § 241.8; expedited removal proceedings—a shortened form of proceedings applicable to recent arrivals, 8 U.S.C. § 1225(b)(1)(A)(i); and full trial-like removal proceedings subject to administrative and judicial appeals, *id.* § 1229a. Proceedings under the INA are "the sole and exclusive procedure" for issuing removal orders. *See id.* § 1229a(a)(3). For people who are eventually ordered removed, Congress has extensively regulated which countries they may be removed to. *Id.* § 1231(b). And Congress established multiple mechanisms that allow noncitizens to rescind, reconsider, and reopen old orders of removal. *Id.* § 1229a(b)(5)(C), (c)(6)-(7).

Noncitizens who have been deported and are seeking immigration relief in removal proceedings have federal permission to remain in the country while their immigration proceedings are ongoing. *See Villas at Parkside Partners v. City of Farmers Branch,* 726 F.3d 524, 530 (5th Cir. 2013) (en banc) (plurality opinion) (federal law "contemplates a non-citizen's residence in the United States until potential deportation"). And, even for those who reenter unlawfully, Congress

6

enacted a range of protections that may be pursued affirmatively or in removal proceedings. Noncitizens in reinstatement proceedings may seek withholding of removal, because Congress barred federal officials from removing people to likely persecution or torture, in compliance with the United States' obligations under international treaties. *See* 8 U.S.C. § 1231(b)(3); *see also* 8 C.F.R. §§ 208.31, 241.8(e). Except for people whose removal orders are reinstated, asylum remains available to those who are eligible, regardless of any prior removal order, and can be pursued through multiple mechanisms. 8 U.S.C. §§ 1158(d), 1225(b)(1)(B); 8 C.F.R. § 208.2. In addition, individuals with a prior removal order who are placed in full removal proceedings may apply for other forms of relief, including cancellation of removal. 8 U.S.C. § 1229b(b). Noncitizens who have reentered following a removal order may also apply affirmatively for numerous forms of relief, including nonimmigrant status for victims of trafficking and crimes, *id.* § 1101(a)(15)(T), (U), temporary protected status, *id.* § 1254a(a), and special immigrant juvenile status for noncitizen youth, *id.* § 1101(a)(27)(J). *See, e.g.,* 8 C.F.R. §§ 214.11(d)(9)(i) (prior orders of removal, deportation or exclusion are "cancelled" upon approval of application for T nonimmigrant status); 214.14(c)(5)(i) (same for U nonimmigrant status application approval).

Federal discretion and control over the complex procedures for entry and removal are central to the congressional scheme. "A principal feature of the

removal system is the broad discretion exercised by immigration officials." *Arizona*, 567 U.S. at 396. Federal officials "decide whether it makes sense to pursue removal at all." *Id.* Federal officials choose among the several distinct removal processes Congress established. *See Biden v. Texas*, 597 U.S. 785, 792 (2022); *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 523 (BIA 2011). Federal officials decide whether to deploy the associated criminal immigration charges. *See Texas,* 97 F.4th at 281. And federal officials decide whether to extend immigration relief to otherwise removable noncitizens. *See, e.g.*, *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 30 (1996).

## II.    SF2340 REGULATES ENTRY AND REMOVAL

SF2340 is an attempt by a single state to supersede this complex, nationwide federal system. It establishes two new state crimes that regulate reentry following exclusion, deportation, or removal, and that order noncitizens to leave the country without any room for federal discretion or opportunity to seek relief from removal. SF2340 contains no exceptions, criminalizing even those who currently have lawful immigration status or who may be in the process of obtaining such status.

Iowa's new State Illegal Reentry offense makes it a crime for a noncitizen to enter, attempt to enter, or be found in Iowa if the person has been denied admission, excluded, deported, or removed from the United States or departed from the United States with an outstanding order of exclusion, deportation, or

8

removal. Iowa Code § 718C.2(1). Unlike the federal reentry crime, SF2340 does not provide a defense for noncitizens who reentered with the consent of immigration authorities. *Id.* State Illegal Reentry is an aggravated misdemeanor, carrying up to two years imprisonment; with certain aggravating factors it is punishable as a felony with a penalty of up to ten years. *Id.* §§ 718C.2(2), 902.9, 903.1.

SF2340 also creates a new mechanism for the State of Iowa to unilaterally deport individuals from the United States. If a person is convicted of State Illegal Reentry, the presiding state judge *must* enter an Order to Return, which requires the defendant to return to a particular country: "the foreign nation from which the person entered," *id.* § 718C.4, regardless of their nationality or country of origin.

The order must specify how the person will be transported to a port of entry and which Iowa law enforcement agency is responsible for monitoring compliance. *Id.* § 718C.4(5); *see also* Appellant Br. at 8. A state judge may alternatively enter an Order to Return at the beginning of a case in lieu of continued prosecution and imprisonment if certain conditions are met. Iowa Code § 718C.4(1)-(3).

Refusal to comply with an Order to Return is a state felony offense punishable by up to 10 years in prison; there are no affirmative defenses. *Id.* §§ 718C.5, 902.9(1)(*d*). SF2340 also provides that an "Order to Return" is a predicate removal for the State's Illegal Reentry crime. *Id.* § 718C.2(3).

9

Additionally, SF2340 specifically prohibits state authorities from abating prosecution for State Illegal Reentry or noncompliance with the Order to Return on the basis that a "federal determination regarding the immigration status of the person is pending or will be initiated." *Id.* § 718C.6.

## III. PARTIES AND PROCEDURAL HISTORY

Plaintiff Jane Doe, an Iowa resident, widow, and grandmother, was deported in 2005.[1] App.Vol.I.62-63; R.Doc.9-3 ¶¶ 2, 4, 10. After waiting seventeen years to be reunited with her U.S. citizen husband and children, Ms. Doe received a waiver of inadmissibility and authorization to return to the United States as a lawful permanent resident in 2022. App.Vol.I.64; R.Doc.9-3 ¶¶ 14-15.

Plaintiff Elizabeth Roe is a lawful permanent resident who lives in Iowa with her U.S. citizen husband. App.Vol.I.70; R.Doc.9-4 ¶¶ 2, 4. Ms. Roe was deported in 2017 and returned to the United States in 2023 after receiving a waiver of inadmissibility. App.Vol.I.71; R.Doc.9-4 ¶¶ 9, 13.

Plaintiff Iowa MMJ is a membership-based legal services and advocacy organization whose members include Ms. Doe and Ms. Roe. App.Vol.I.75, 81; R.Doc.9-5 ¶¶ 3, 23-24. Iowa MMJ's members also include nineteen-year-old "Anna," who entered as a child, was deported as a child, and returned unlawfully as a child, before being granted asylum, App.Vol.I.80; R.Doc.9-5 ¶ 20; and

---

[1] Plaintiffs Jane Doe and Elizabeth Roe are proceeding anonymously. R.Doc.37.

10

"David," who was similarly deported and returned unlawfully, but who currently does not have lawful immigration status, App.Vol.I.81; R.Doc.9-5 ¶ 22.[2]

Defendant is Brenna Bird in her official capacity as Attorney General of Iowa.[3]

The United States filed a parallel challenge to SF2340. Plaintiffs and the United States filed motions for a preliminary injunction, which were not formally consolidated but were decided in one order. On June 17, 2024, the district court preliminarily enjoined the enforcement of SF2340. App.Vol.I.223-47; R.Doc.51. It held that Plaintiffs Doe and Roe have standing because they face a credible threat of prosecution under the plain text of the statute and that Defendant's alternative construction attempted to rewrite the law. App.Vol.I.234-38; R.Doc.51 at 12-16. The district court also found that Plaintiff Iowa MMJ had standing as an association on behalf of its members Ms. Doe, Ms. Roe, and David. App.Vol.I.238-40; R.Doc.51 at 16-17.

The district court held that SF2340 is field and conflict preempted. App.Vol.I.241-45; R.Doc.51 at 19-23. Congress' "comprehensive federal scheme"

---

[2] Anna and David are both pseudonyms.

[3] Plaintiffs also named as defendants Kimberly Graham in her official capacity as Polk County Attorney, and Zach Herrmann in his official capacity as Clayton County Attorney. Graham and Herrmann stipulated that they would be bound by any injunction or judgment in the case and the district court stayed all deadlines with respect to these defendants. R.Doc.26, 33.

11

for immigration, the court concluded, "'left no room' for state regulation" of illegal reentry. App.Vol.I.242; R.Doc.51 at 20. It determined "there is no reasonable way to interpret *Arizona*" to "allow[] state law attempts to criminalize illegal reentry." *Id.* The court further found that SF2340 conflicts with the federal scheme because it criminalizes conduct that is authorized under federal law, hinders noncitizens' ability to seek federal immigration relief, and interferes with the "intricate and specialized" federal removal system. App.Vol.I.243-44; R.Doc.51 at 21-22.

Defendant timely appealed the orders entered in this case and the parallel case brought by the United States. This Court consolidated the two cases on appeal.

## SUMMARY OF THE ARGUMENT

I.     The district court correctly held that Plaintiffs are likely to succeed on the merits.

A.     Plaintiffs' claims are justiciable. The plain text of SF2340 establishes that Plaintiffs Doe and Roe, and Iowa MMJ members Anna and David, are subject to prosecution, giving them standing and Iowa MMJ associational standing. Defendant's argument that SF2340 precludes prosecution of noncitizens who return with federal authorization is contrary to the text and the state legislature's deliberate omission of the federal exceptions for those who reenter with consent.

12

Nonetheless, even under Defendant's reading, Iowa MMJ, on behalf of David and Anna, has standing.

B.     Plaintiffs have an equitable cause of action under *Ex parte Young*. It is undisputed that Defendant Bird is responsible for enforcing SF2340 and Plaintiffs seek only prospective relief. Additionally, Iowa MMJ may bring an equitable claim on behalf of its members.

C.     SF2340 is field preempted as it encroaches on the federal government's dominant interest in, and complex regulation of, the entry and removal of noncitizens. *Arizona* reaffirms that states cannot enforce their own parallel immigration regimes.

SF2340 is also conflict preempted because it disrupts Congress's statutory scheme by undermining federal authorities' discretion and control over the entry, processing, removal, and prosecution of noncitizens who reenter the country, and by interfering with executive authority over foreign relations. Defendant argues facial relief is not warranted, but these conflicts—along with field preemption—doom every application of the statute.

D.     Even if only the Order to Return provisions were preempted, they cannot be severed as they are crucial to the statute's purpose.

13

II.     Finally, the district court did not abuse its discretion when it found that SF2340 will cause irreparable harm to Plaintiffs and the public, and the balance of equities and public interest weigh in favor of granting an injunction.

## ARGUMENT

## I.     STANDARD OF REVIEW

Plaintiffs seeking a preliminary injunction must demonstrate that: (1) they are likely to "succeed on the merits"; (2) they are likely to suffer "irreparable harm" absent preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in "the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). This Court reviews the district court's ultimate decision to grant a preliminary injunction for abuse of discretion, factual findings for clear error, and legal conclusions *de novo*. *Sleep No. Corp. v. Young*, 33 F.4th 1012, 1016 (8th Cir. 2022).

## II.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

### A.     Plaintiffs Have Standing

Defendant argues that Plaintiffs do not have standing to challenge SF2340, relying on an atextual interpretation of the statute. Appellant Br. at 24-29, 40-47. But the district court correctly determined that Plaintiffs Doe, Roe, and Iowa MMJ member David are all arguably subject to prosecution under SF2340 and thus they,

14

and Iowa MMJ on their behalf, have standing to bring this challenge.

App.Vol.I.234-40; R.Doc.51 at 12-18.[4]

>    1.    Plaintiffs Doe and Roe and Iowa MMJ, On Behalf of Its
>           Members, Have Standing

While Plaintiffs must show an injury in fact sufficient for standing, "[c]ourts 'do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat.'" *Alexis Bailly Vineyard, Inc. v. Harrington*, 931 F.3d 774, 777–78 (8th Cir. 2019) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007)). In this pre-enforcement challenge to a criminal statute, Plaintiffs Doe and Roe and Iowa MMJ members Anna and David need only establish that their "intended future conduct is *arguably proscribed* by the statute they wish to challenge" such that "there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59, 162 (2014) (cleaned up) (emphasis added). "This is a forgiving standard...." *Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 699 (8th Cir. 2021). Under this standard, the question for assessing standing is whether Plaintiffs' construction is "reasonable enough," "not whether the intended conduct is *in fact* proscribed." *Picard v. Magliano*, 42 F.4th 89, 98 (2d Cir. 2022); *see also West Virginia v. Dep't*

---

[4] Moreover, Defendant does not dispute that the United States has standing and that is sufficient for this Court to affirm the preliminary injunction. *See Animal Legal Def. Fund v. Reynolds*, 89 F.4th 1071, 1078 (8th Cir. 2024).

15

*of Treasury*, 59 F.4th 1124, 1137-38 (11th Cir. 2023) (the question of what a statute actually regulates "goes to the merits of [plaintiffs'] claims, not their standing to raise them"). Plaintiffs easily surpass this test.

The credible threat faced by Ms. Doe, Ms. Roe, Anna, and David falls easily within the plain text of the statute. They are all "alien[s]," who "ha[ve] been . . . removed from the United States," have since "enter[ed]," and can be "found in" Iowa. Iowa Code § 718C.2(1); *see* App.Vol.I.62-63; R.Doc.9-3 ¶¶ 2, 4, 10-12; App.Vol.I.70-71; R.Doc.9-4. ¶¶ 2, 8-9, 13; App.Vol.I.80-81; R.Doc.9-5 ¶¶ 20, 22. As the district court found, that is more than enough to "plausibl[y]" come within the statute and therefore face an imminent risk of prosecution such that they have standing. App.Vol.I.235; R.Doc.51, at 13; *see Alexis Bailly Vineyard*, 931 F.3d at 777–78 ("[W]hen a course of action is within the plain text of a statute, a credible threat of prosecution exists.") (cleaned up).

Defendant Bird argues that Ms. Doe and Ms. Roe are not subject to prosecution because they returned to the United States with federal authorization. Appellant Br. at 41, 44; *see id.* at 24-29. As a threshold matter, that is beside the point, because only one plaintiff need demonstrate standing. *Animal Legal Def. Fund*, 89 F.4th at 1078. As the district court found, David, an Iowa MMJ member who graduated from high school in Iowa and unlawfully returned following a deportation order, currently resides in Iowa without lawful status and is subject to

16

prosecution under SF2340. App.Vol.I.239; R.Doc.51, at 17; *see* App.Vol.I.8, 18-19; R.Doc.1 ¶¶ 14, 60. This was not clear error. Likewise, contrary to Defendant's suggestion otherwise, Appellant Br. at 44, Anna also returned to the United States without consent before later being granted asylum, App.Vol.I.80; R.Doc.9-5 ¶ 20. So she too is subject to arrest even if one invents a statutory exception for consent. *See* Appellant Br. at 25-26. Therefore, even under Defendant's strained reading, Iowa MMJ has standing on behalf of its members.

In any case, the statutory text does not include such an exception. That is, nothing in SF2340 exempts or immunizes people to whom the federal government granted permission to reenter after deportation. And that silence is even starker when the statute is understood in context. "[C]rucially," SF2340 tracks the federal illegal reentry statute, but specifically omits that statute's exception for persons who return to the United States with federal consent. App.Vol.I. 236, R. Doc. 51 at 14. *Compare* Iowa Code § 718C.2(1) *with* 8 U.S.C. § 1326(a)(2)(A)-(B). More than merely a failure to make a "carbon copy" of the federal statute, Appellant Br. at 23, the Iowa Legislature intentionally chose *not* to include key text from the federal statute which would have protected those who return lawfully. This omission is fatal to Defendant's new proposed construction, because "legislative intent is expressed by omission as well as by inclusion, and the express mention of one thing implies the exclusion of others not so mentioned." *Kucera v. Baldazo*,

17

745 N.W.2d 481, 487 (Iowa 2008) (quoting *Meinders v. Dunkerton Cmty. Sch. Dist.,* 645 N.W.2d 632, 637 (Iowa 2002)); *see also* App.Vol.I.236, R.Doc.51, at 14 ("[T]he Court must give effect to the Iowa Legislature's conspicuous decision not to include the defenses that exist under federal law."). Where the Iowa Legislature has "adopted federal law for some, but [] not all, purposes," the district court was correct to not write into the statute a federal defense that the State chose to omit. *MidAmerica Sav. Bank v. Miehe,* 438 N.W.2d 837, 838 (Iowa 1989).

Defendant strains to argue that Plaintiffs are not covered by the statute. *See* Appellant Br. at 25 (asserting SF2340 applies only if the noncitizen's "prevailing condition is 'denied admission,' 'excluded,' 'removed,' or 'departed'"). But in addition to being contrary to the text, this reading is grounded in a misunderstanding of immigration law. A removal—which was called an exclusion or deportation in previous versions of the federal statutes—is not a continuing status that can be eliminated by later permission to reenter; it is an action that occurs at a specific moment in time. *See, e.g.*, 8 U.S.C. § 1101(g) (noncitizen subject to a removal order is considered "deported" or "removed" once she "has left the United States"); *id.* § 1231(a) (specifying 90-day period for removal, and what the government should do if removal is not accomplished during that period). The Iowa statute refers to a person who "has been . . . removed," Iowa Code § 718C.2(1)(a), which has only one meaning: someone against whom the discrete

18

action of removal was taken at a particular moment in the past. *See United States v. Wilson*, 503 U.S. 329, 333 (1992) (holding that legislature's "use of a verb tense is significant in construing statutes"). Departure while an order of removal was outstanding under § 718C.2(1)(b) is likewise a specific act. *See* 8 U.S.C. § 1101(g). A prior removal may have current consequences, including triggering inadmissibility, but it is a historical fact, not a current "condition" that is obviated by permission to reenter.

Defendant says a previously deported noncitizen who returned with federal consent "would not say that she reentered as 'deported,'" Appellant Br. at 25, but this is irrelevant. In the words of the statute: she "has been deported." Iowa Code § 718C.2(1)(a). To protect such individuals from federal prosecution for reentry, Congress explicitly included an exception within 8 U.S.C. § 1326, protecting from criminal liability those who have been deported *but* are later granted permission to reenter. As the district court observed, if Defendant's construction were correct, then the exception in § 1326(a) would be unnecessary. App.Vol.I.236; R.Doc.51, at 14; *see U.S. ex rel. Harlan v. Bacon*, 21 F.3d 209, 212 (8th Cir. 1994) ("Congress is not to be presumed to have done a vain thing, namely, using superfluous language."). At a minimum, it is "arguable" that those who have been deported and who return with federal consent are subject to prosecution under SF2340.

19

Nor can the abatement provision at Iowa Code § 718C.6 protect Plaintiffs from the threat of prosecution. Defendant makes the implausible argument that because the statute *forbids* abatement for those with pending federal determinations, it *mandates* abatement for everyone with a final federal determination. But nothing in the statutory text *requires* abatement for anyone. Even accepting abatement is possible in some undefined circumstances, this possibility cannot vitiate the credible threat of prosecution for purposes of standing. *Arkansas Right to Life State Pol. Action Comm. v. Butler*, 146 F.3d 558, 560 (8th Cir. 1998) ("Plaintiffs [] are not required to expose themselves to arrest or prosecution under a criminal statute in order to challenge a statute in federal court.").

Defendant resorts to the canon of constitutional avoidance, but as the district court explained, that canon does not allow the Court to "rewrite Senate File 2340 by interpreting the past tense to mean the present tense and add defenses the Iowa Legislature intentionally chose not to include." App.Vol.I.237, R.Doc.51, at 15. Here, Defendant has not identified "competing plausible interpretations of [the] statutory text" to justify reliance on the presumption of constitutionality. *State v. Burns*, 988 N.W.2d 352, 366–67 (Iowa 2023) (quoting *Clark v. Martinez*, 543 U.S. 371, 381 (2005)); *see Willson v. City of Bel-Nor, Mo.*, 924 F.3d 995, 1004 (8th Cir. 2019) ("This court will not rewrite a law to conform it to constitutional

20

requirements.") (internal citation omitted). This Court "can't create a new requirement that the legislature chose not to enact," *Burns*, 988 N.W.2d at 366—particularly in the context of standing, where Plaintiffs need only show that they are arguably at risk of prosecution under a reasonable construction of the statute.

Finally, Defendant's ad hoc interpretation in a single brief does not even bind *her*, much less the state courts, county prosecutors, and police who will enforce SF2340. App.Vol.I.238, R.Doc.51, at 16; *see State v. Meyers*, 938 N.W.2d 205, 211 (Iowa 2020) ("We give attorney general opinions respectful consideration but are not bound by them."); Iowa Code § 331.756(1) (granting county attorneys independent authority to enforce criminal laws). As such, it cannot meaningfully protect Plaintiffs—and certainly cannot obviate their standing. *See Rodgers v. Bryant*, 942 F.3d 451, 455 (8th Cir. 2019) (a state's "in-court assurances [of non-enforcement] do not rule out the possibility that it will change its mind and enforce the law more aggressively in the future" where "the law's plain language covers [plaintiffs'] intended activities"); *cf. United States v. Stevens*, 559 U.S. 460, 480 (2010) ("We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly."). Given the text and context of SF2340, Plaintiffs clear the low bar for standing because their conduct is "arguably proscribed" by the statute.

2. Iowa MMJ Has Standing

Because Plaintiffs Ms. Doe and Ms. Roe, along with Anna and David, are all members of Iowa MMJ and each has standing, MMJ has standing to sue on their behalf. *See Kuehl v. Sellner*, 887 F.3d 845, 851 (8th Cir. 2018). It easily satisfies the other elements of associational standing. Enjoining SF2340 is germane to MMJ's mission of "expanding access to lawful immigration pathways" and "preventing the unjust removal of immigrants." App.Vol.I.75-76, 83, 85; R.Doc.9-5 ¶¶ 4, 29, 33. Indeed, Defendant *agrees* that SF2340 authorizes the arrest and prosecution of individuals like MMJ's clients who are seeking to obtain status under federal immigration law. Appellant Br. at 34. Finally, Defendant does not dispute that MMJ's purely legal claims for declaratory and injunctive relief do not require the participation of its members. *See Heartland Acad. Cmty. Church v. Waddle*, 427 F.3d 525, 533 (8th Cir. 2005) ("[B]ecause [plaintiff association] seeks only declaratory and prospective injunctive relief, the participation of individual [members] . . . is not required.").

Defendant's reliance on *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024) is misplaced. The district court held that MMJ has *associational* standing. But *Alliance* is an *organizational* standing case, which did not involve a membership organization whose members were threatened with criminal prosecution. *Id.* at 393-95. For associational standing, Iowa MMJ need not show a

22

direct injury to itself. *See Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 342 (1977) ("[A]n association may have standing to assert the claims of its members even where it has suffered no injury from the challenged activity."). It was not necessary for the district court to decide whether MMJ has organizational standing in its own right, and it is not necessary for this Court to decide that question either.

Defendant nevertheless urges the Court to reach and reject organizational standing based on *Alliance*. But the district court never considered organizational standing in general or *Alliance* in particular. This is "a court of review, not first view." *United States v. Nunez-Hernandez*, 43 F.4th 857, 859 (8th Cir. 2022) (internal quotation marks omitted). Therefore, should this Court find it necessary to reach organizational standing, remand to the district court to review the factual record and make an initial determination is appropriate. *Sanzone v. Mercy Health*, 954 F.3d 1031, 1047 (8th Cir. 2020) (remanding to the district court to make initial standing determination).

In any event, Iowa MMJ has shown that SF2340 would "directly affect[] and interfere[] with" its "core business activities." *All. for Hippocratic Med.*, 602 U.S. at 395. Unlike the plaintiff in *Alliance*, MMJ is "not only [] an issue-advocacy organization"; instead, like the plaintiff in *Havens*, it provides direct services, in MMJ's case to noncitizens seeking to maintain and obtain federal immigration

23

status. *Id.* (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 368 (1982)). SF2340 would "perceptibly impair" MMJ's operations by forcing it to alter its intake process, re-screen existing clients, and incorporating state criminal law into their immigration legal services practice. *Id.*; *see* App.Vol.I.82-86; R.Doc.9-5 ¶¶ 27-33. These changes would lead to the loss of grant funding. App.Vol.I.77-78, 81-82, 86; R.Doc.9-5 ¶¶ 7, 8, 25, 34. These efforts to address the fallout from SF2340 establish organizational standing.

### 3.    Plaintiffs Have Standing to Challenge Section 4

Defendant maintains that Plaintiffs lack standing to challenge the Order to Return provision in Section 4 of SF2340 because judges, not prosecutors, enter those orders. Appellant Br. at 47-48. But Defendant does not dispute that she has authority to initiate a prosecution for State Illegal Reentry, which is the prerequisite to an Order to Return, *and* the authority to prosecute for failure to comply with that order, which is the mechanism for enforcing Section 4. *See* Iowa Code §§ 718C.4-5. Thus, Plaintiffs have standing to challenge Section 4 because the injury they would suffer under that provision is "fairly traceable" to Defendant. *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 956 (8th Cir. 2015). The cases on which Defendant relies are inapposite. Both involved laws enforced by third-party private actors—the state defendants had no authority to enforce the challenged law. *Digital Recognition Network*, 803 F.3d at 958; *Whole Woman's*

24

*Health v. Jackson,* 595 U.S. 30, 35-36 (2021) (application for injunctive relief involving Texas law enforced by private parties). Because the defendants here are "officials whose role it is to administer and enforce" SF2340, including Section 4, an injunction would remedy the harm resulting from a state removal order—even if it only barred Defendant from enforcing the Order to Return provisions. *281 Care Comm. v. Arneson*, 638 F.3d 621, 631 (8th Cir. 2011).

## B. Plaintiffs Have a Cause of Action

Defendant acknowledges that *Ex parte Young*, 209 U.S. 123 (1908), permits an equitable cause of action for claims under the Supremacy Clause. Appellant Br. at 37. Indeed, the "power of federal courts of equity" to "issue an injunction upon finding [] state regulatory actions preempted" is well established. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326-27 (2015) (courts "regularly consider[]" such challenges); *see Crown Castle Fiber, L.L.C. v. City of Pasadena, Tex.*, 76 F.4th 425, 434-35 (5th Cir. 2023). Nor does Defendant suggest that Congress has displaced Plaintiffs' equitable claims in this case. *See Texas*, 97 F.4th at 276.

Instead, Defendant argues that Plaintiffs cannot invoke *Ex parte Young* because they are not subject to prosecution under SF2340. Appellant Br. at 40. That is no different from her standing argument. Thus, if Plaintiffs have standing, Defendant offers no reason why they would lack a cause of action. She certainly

25

does not dispute that she is a state officer charged with enforcing SF2340 or that Plaintiffs seek only prospective relief. *See Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (under *Ex parte Young* "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective") (cleaned up).

Likewise, Iowa MMJ has associational standing and therefore can step into the shoes of its members who are at risk of enforcement and bring an *Ex parte Young* claim on their behalf. *See, e.g., Pharm. Rsch. & Manufacturers of Am. v. Williams*, 64 F.4th 932, 947-49 (8th Cir. 2023) (holding organization had associational standing and satisfied *Ex parte Young*); *Dream Defs. v. Governor of the State of Fla.*, 57 F.4th 879, 887 & n.4, n.5 (11th Cir. 2023) (same). Defendant makes no argument to the contrary.[5]

---

[5] Defendant's argument that MMJ as an organization lacks standing because it does not face any enforcement action is irrelevant because MMJ has standing as an association. Nevertheless, courts routinely find nonregulated parties satisfy *Ex parte Young*, consistent with the Supreme Court's admonition that "there is no warrant in our cases for making the validity of an *Ex parte Young* action turn on the identity of the plaintiff." *Va. Off. for Prot. & Advoc.*, 563 U.S. at 256; *id.* at 261 (finding state agency not subject to any enforcement action could bring claim under *Ex parte Young* seeking records from another state agency); *Citizens for Equal Protection v. Bruning*, 455 F.3d 859, 863-64 (8th Cir. 2006) (advocacy organization challenging same-sex marriage bar); *Book People, Inc. v. Wong*, 91 F.4th 318, 335 (5th Cir. 2024) (suit by booksellers permitted even though statute operated coercively against libraries only, and harmed booksellers only indirectly).

Appellate Case: 24-2263    Page: 36    Date Filed: 08/20/2024 Entry ID: 5426310

### C. SF2340 Is Preempted

        1.     <u>SF2340 Intrudes on the Federal Field of Entry and Removal</u>

SF2340 creates a state immigration system that regulates noncitizens' entry into the United States and expels them from the country. In doing so, the law attempts to bypass Congress's comprehensive immigration scheme and intrudes on the federal government's exclusive immigration authority. *Arizona*, 567 U.S. at 409-10. Defendant's assertion that Iowa is merely enforcing federal law "ignores the basic premise of field preemption—that States may not enter, *in any respect*" the area of entry and removal because "the Federal Government has reserved [that domain] for itself." *Id.* at 402 (emphasis added). As the district court held, SF2340 is plainly field preempted.

Courts infer field preemption from either a federal interest "so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or a "framework of regulation 'so pervasive . . . that Congress left no room for the States to supplement it.'" *Id*. at 399 (quoting *Rice v. Santa Fe Elevator Corp*., 331 U.S. 218, 230 (1947)). Both are present here.

The first reason for field preemption is that the federal interest in immigration is "overwhelmingly dominant." *Ga. Latino All. for Hum. Rts. v. Governor of Ga.,* 691 F.3d 1250, 1264 (11th Cir. 2012). "For nearly 150 years, the Supreme Court has held that the power to control immigration—the entry,

27

admission, and removal of noncitizens—is *exclusively* a federal power." *Texas*, 97 F.4th at 278–79 & n.64; *see, e.g.*, *Chy Lung v. Freeman*, 92 U.S. 275, 280 (1875) ("The passage of laws which concern the admission of citizens and subjects of foreign nations to our shores belongs to Congress, and not to the States."); *Truax v. Raich*, 239 U.S. 33, 42 (1915) ("The authority to control immigration—to admit or exclude aliens—is vested solely in the Federal government."); *Hines v. Davidowitz*, 312 U.S. 52, 62 & n.10 (1941) (noting the "continuous recognition by this Court" of "the supremacy of the national power . . . over immigration . . . and deportation"); *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 419 (1948) ("[T]he states are granted no such powers."); *Arizona*, 567 U.S. at 409 ("Policies pertaining to the entry of aliens and their right to remain here are entrusted exclusively to Congress") (quoting *Galvan v. Press*, 347 U.S. 522, 531 (1954)) (cleaned up).

This Court has likewise recognized that the "power to regulate immigration" and determine "who should or should not be admitted into the country" is "unquestionably exclusively a federal power" and is "per se pre-empted." *Keller v. City of Fremont*, 719 F.3d 931, 940 (8th Cir. 2013) (quoting *De Canas v. Bica,* 424 U.S. 351, 354-55 (1976)). Other circuits have reached the same conclusion. *See United States v. Alabama*, 691 F.3d 1269, 1293 (11th Cir. 2012) ("The power to expel aliens has long been recognized as an exclusively federal power."); *Lozano*

28

*v. City of Hazleton*, 724 F.3d 297, 315 (3d Cir. 2013) (similar). In fact, the Fifth Circuit recently held that a Texas law with provisions nearly identical to SF2340 was field preempted, as it would "allow the State to achieve its own immigration policy." *Texas*, 97 F.4th at 292. An unbroken line of precedent thus dictates that there is a "dominant" federal interest in regulating entry and removal, which excludes any state regulation of these matters.

Consistent with this dominant federal interest, Congress has enacted a "comprehensive, complex, and national" regulatory framework governing the entry and removal of noncitizens. *Texas*, 97 F.4th at 285. Through the INA, "Congress has comprehensively detailed the rules by which noncitizens may enter and live in the United States." *Patel v. Garland*, 596 U.S. 328, 331 (2022); *see, e.g.*, 8 U.S.C. §§ 1153, 1184, 1225, 1229a. Congress also has exhaustively detailed the rules for entry and reentry and created a variety of criminal and civil penalties for entering between ports of entry. *See* 8 U.S.C. §§ 1225, 1325, 1326, 1323, 1324, 1327, 1328, 1329. The INA also sets elaborate standards and procedures to determine when people who enter without permission may be arrested, detained, and removed by federal officials, providing "multiple procedural channels" and "a detailed process for reviewing those determinations." *Texas*, 97 F.4th at 285; *see, e.g.*, 8 U.S.C. §§ 1225(b), 1226(a)-(c), 1182(d)(5)(A). And Congress has made clear that the INA

29

sets out "the sole and exclusive procedure" for determining the status of a

noncitizen. 8 U.S.C. § 1229a(a)(3).

Through these intricate and interrelated provisions, Congress has established

"a full set of standards governing" the entry and removal of noncitizens, "including

the punishment for noncompliance"—a system that is "designed as a 'harmonious

whole.'" *Arizona*, 567 U.S. at 401 (quoting *Hines*, 312 U.S. at 72). The federal

entry and removal scheme is as complex and "pervasive" as it gets, and therefore

leaves "no room for the States to supplement it." *Id.* at 399; *Texas*, 97 F.4th at 286

(Congress's "detailed statutory scheme" governing the "unlawful entry and reentry

of noncitizens" "occupies the entire field.") (cleaned up); *see Lozano*, 724 F.3d at

315 (similar).[6]

Because the federal government has occupied the field of entry and removal,

no state laws—even laws that the state asserts are parallel to federal law—are

permissible. As the Supreme Court's decision in *Arizona* makes clear, state

regulation of entry and removal is field preempted. In *Arizona,* the Court

invalidated Section 3 of SB 1070, which criminalized failure to carry a federal

noncitizen registration form. 567 U.S. at 400–03. Similar to SF2340, Section 3 of

---

[6] The state invokes the presumption against preemption, Appellant Br. at 49, but
that presumption "is not triggered when the State regulates in an area where there
has been a history of significant federal presence." *United States v. Locke*, 529
U.S. 89, 108 (2000).

Appellate Case: 24-2263     Page: 40     Date Filed: 08/20/2024 Entry ID: 5426310

the Arizona law "add[ed] a state-law penalty for conduct proscribed by federal law," where the "federal statutory directives provide[d] a full set of standards." *Id.* at 400–01. Just as in *Arizona*, "[p]ermitting the State to impose its own penalties for the federal offenses [] would conflict with the careful framework Congress adopted." *Id.* at 402.

Defendant contends that field preemption is *limited* to noncitizen registration. Appellant Br. at 51-52. The district court rightly observed there is "no reasonable way to interpret *Arizona* as forbidding state law attempts to criminalize alien registration violations but allowing state law attempts to criminalize illegal reentry." App.Vol.I.242; R.Doc.51, at 20. Indeed, everything the Supreme Court said about registration applies with even greater force "to the sensitive topic of noncitizens entering the country." *Texas,* 97 F.4th at 279-82 (rejecting argument identical to Iowa's); *Oklahoma*, 2024 WL 3449197, at *8 (finding "no reason why *Arizona*'s logic does not naturally extend to this . . . framework regulating noncitizen entry and reentry"). The federal regime governing entry and removal is even more "pervasive" than the noncitizen registration scheme. *Arizona,* 567 U.S. at 399. Rules about entry across the international border and removal to foreign countries touch on "foreign relations" at least as much if not significantly more so than registration documents. *Id*. at 400 (quoting *Hines*, 312 U.S. at 66–67). As with registration, if a state entry law "were valid, every State could give itself

31

independent authority to prosecute federal [entry] violations, diminishing the

Federal Government's control over enforcement" and allowing prosecution "even

in circumstances where federal officials in charge of the comprehensive scheme

determine that prosecution would frustrate federal policies." *Id.* at 402 (cleaned

up). Iowa offers no coherent reason why registration would be field preempted, but

the field of entry and removal would not.

Defendant makes much of the fact that *Arizona* struck down two other

provisions on conflict preemption grounds, not field preemption. Appellant Br. at

55-58. But neither of those provisions sought to directly regulate people's entry

into and removal from the country. Rather, they regulated the employment of

immigrants and local assistance to federal immigration officials—two areas where

Congress had expressly permitted specific forms of state action. *See* 8 U.S.C. §

1324a(h)(2) (permitting "licensing" laws); 8 U.S.C. § 1357(g)(10) (permitting

"cooperation" and "communication").[7] In holding that the two Arizona provisions

were conflict preempted and thus an obstacle to achieving congressional

objectives, the Court did not remotely suggest that states could bypass the federal

---

[7] Plaintiffs do not argue that "all State regulations touching immigration are preempted." Appellant Br. 16. The Supreme Court has permitted some state regulation of immigration in areas outside of the core immigration matters of entry and removal. *See De Canas,* 424 U.S. at 355-56 (employment law); *Chamber of Comm. v. Whiting*, 563 U.S. 582 (2011) (same).

Appellate Case: 24-2263    Page: 42    Date Filed: 08/20/2024 Entry ID: 5426310

system altogether and enact their own entry and removal schemes.  Unlike with employment and communication between federal and local authorities, Congress has done nothing to invite independent state regulation of people's entry and removal. *See Texas*, 97 F.4th at 286-87.[8]

Defendant next argues that states are allowed to "impose legal consequences reflecting those Congress has already imposed." Appellant Br. at 59. But even if SF2340 were so limited, in a preempted field, states cannot add their own penalties to violations of federal law. *Arizona,* 567 U.S. at 401-02.[9] Indeed, that is *exactly* what Arizona tried to do in Section 3. Just like Iowa, Arizona argued that Section 3 had the "same aim" and "substantive standards" as federal law, and simply "add[ed] a state-law penalty for conduct proscribed by federal law." 567 U.S. at 400. But the Supreme Court held it was nonetheless field preempted.

---

[8] Amicus Immigration Reform Law Institute (ILRI) argues the Congress "recognized that aliens may stipulate to their removal during a criminal trial under State law" and thus "States may permissibly play a role in determining removability." ILRI Br. at 6-7 (citing 8 U.S.C. § 1326(b)). But nothing in § 1326(b) grants state courts the power to enter removal orders, *see* 8 U.S.C. § 1229a(3) (federal removal proceedings "shall be the sole and exclusive procedure for determining whether an alien may be . . . removed"); at most, it clarifies that noncitizens may stipulate to their removal with federal authorities at any time, including while facing a state criminal prosecution, *see* 8 C.F.R. § 1003.25(b) (stipulated removal orders before immigration judges); 8 U.S.C. § 1228(c)(5) (stipulated removal orders before federal judges).

[9] As explained, *see supra* at 17-19, SF2340 criminalizes activity—reentry with federal permission—that federal law does not criminalize.

Appellate Case: 24-2263     Page: 43     Date Filed: 08/20/2024 Entry ID: 5426310

Resisting this conclusion, Defendant relies on *Kansas v. Garcia*, 589 U.S. 191 (2020), to suggest that parallel state and federal regulations are always permissible. But that is not true in a preempted field; that is the holding of *Arizona*, which *Garcia* did not disturb. *Garcia*, 140 S. Ct. at 196. And critically, *Garcia* did not involve or address the core immigration field of entry and removal. It involved prosecutions for submitting a false tax-withholding form, under a generally applicable law about "fraud, forgeries, and identity theft" that "appl[ied] to citizens and [noncitizens] alike." *Id.* at 198. Unlike entry and removal, *Garcia* noted that there was no dominant federal interest or comprehensive federal scheme governing state tax withholding. *Id*. at 208-10.[10] Nothing in that case suggests that states may create a parallel immigration regime regulating the entry and removal of noncitizens.

Under *Arizona*, SF2340's regulation of entry dooms the statute. But it goes even further, also authorizing state-law deportations from the country. Defendant says otherwise, claiming "[n]othing in SF2340 gives Iowa authority to remove a person from Iowa's port of entry. . .." Appellant Br. at 54. But that ignores the plain text of the statute. SF2340 requires judges to impose a mandatory order "to return *to the foreign nation* from which the person entered . . .." Iowa Code §

---

[10] Iowa invokes drug laws as an example of parallel regulation. But there is no 150-year-long line of Supreme Court cases declaring those matters to be exclusively federal.

34

718C.4(4) (emphasis added). Refusal to comply with an Order to Return is a state crime punishable by up to 10 years in prison, and there are no affirmative defenses. *Id.*; § 902.9(d). Given this direct threat of a felony conviction and extended prison term for failure to leave the United States, "it is rather absurd to argue" that Iowa officers are not forcing noncitizens to leave the country. *United States v. Texas*, No. 1:23-CV-1537-DAE, 2024 WL 861526, at *17 (W.D. Tex. Feb. 29, 2024) (rejecting similar argument).

Defendant contends that state officials enforcing SF2340 "may obtain status verifications from federal officials" and need not assess status on their own. Appellant Br. at 53. This is of no moment. Entry and removal regulations are field preempted, regardless of how much state and federal officers may communicate. Section 3 in *Arizona* was not saved by the fact that state officers could have called DHS to verify people's status. Nor would status verifications change the fact that, under SF2340, *state* officers would independently decide what sanctions to apply to reentry, which noncitizens are removed, and even to what country to remove those individuals. Iowa Code § 718C.4. That would eliminate federal officials' "broad discretion" in enforcing the federal scheme, even if state officials called them to verify people's status. *Arizona*, 567 U.S. at 396; 8 U.S.C. § 1103(a)(1), (a)(5).

35

Ultimately, Defendant's argument is that the *state* possesses sovereign "police power to exclude illegal aliens." Appellant Br. at 54; *see id*. at 51, 57. But it has long been settled that core immigration powers are "inherent in [the] sovereignty" of the United States as a nation. *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892). That sovereign authority includes the power "to forbid the entrance of foreigners within its dominions, or to admit them only in such cases and upon such conditions as it may see fit to prescribe," *id*., as well as to "expel" noncitizens from within the country, *Fong Yue Ting v. United States*, 149 U.S. 698, 711 (1893); *see Arizona*, 567 U.S. at 394-95. States, by contrast, are not endowed with "powers of external sovereignty" such as "the power to expel" noncitizens. *United States v. Curtiss Wright Exp. Corp*., 299 U.S. 304, 316-18 (1936) (citing *Fong Yue Ting*, 149 U.S. at 705).

Thus, for 150 years it has been settled that "[t]he passage of laws which concern the admission of citizens and subjects of foreign nations to our shores belongs to Congress, and not to the States." *Chy Lung*, 92 U.S. at 280; *see Arizona*, 567 U.S. at 409 ("Policies pertaining to the entry of aliens and their right to remain here are entrusted exclusively to Congress.") (quoting *Galvan*, 347 U.S. at 531) (cleaned up); *Plyler v. Doe*, 457 U.S. 202, 229 n.23 (1982) (explaining that "the State has no direct interest in controlling entry into this country, that interest being

36

one reserved by the Constitution to the Federal Government").[11] That principle

dooms Iowa's statute in all its applications.[12]

### 2. SF2340 Conflicts with the Federal Scheme

SF2340 is also preempted because it "conflict[s] with federal law." *Arizona*,

567 U.S. at 399. As the district court correctly held, SF2340 conflicts with

Congress's scheme because it criminalizes conduct that is authorized under federal

law, prevents noncitizens from seeking federal immigration relief, and interferes

with the "intricate and specialized" federal removal system. App.Vol.I.243-44;

R.Doc.51, at 21-22. Those conflicts both render the statute conflicted preempted

and "underscore the reason for field preemption." *Arizona*, 567 U.S. at 403.

Defendant makes two arguments against conflict preemption: that SF2340

should be construed as identical to the federal illegal reentry offense, and that

---

[11] In response, Defendant cites *Mayor v. Miln*, 36 U.S. (11 Pet.) 102, 130–132 (1837), to suggest states enjoy broad immigration authority. Appellant Br. at 54. But *Henderson v. Mayor* subsequently explained that *Miln* was a narrow decision which approved only a state law requiring a "catalogue of passengers" arriving by ship. 92 U.S. 259, 274 (1875). *Chy Lung*, decided the same day as *Henderson*, directly held states may not regulate actual entry. 92 U.S. at 280. And, in any event, *Miln* predates Congress's pervasive regulation of immigration, so it could not undermine the field preemptive effect of those statutes.

[12] Iowa argues that the current administration "declines to enforce" the law. Appellant Br. at 59. That is simply inaccurate; thousands of federal officials implement Congress's entry and removal statutes every day. *See* App.284; R.Doc.7-1, at 14; App.326-29; R.Doc.7-4, at 3-6. In any event, the critical fact is *Congress* preempted the field of entry and removal. *See Texas*, 97 F.4th at 287-88 & n.144 (rejecting this argument).

Appellate Case: 24-2263    Page: 47    Date Filed: 08/20/2024 Entry ID: 5426310

Iowa's courts can resolve any conflicts through narrowing constructions of the law in as-applied challenges. Appellant Br. at 60-67. But no construction can eliminate the conflicts identified below, which exist whatever the law's substantive scope. And as explained above, Defendant's proposed reading of the statute is implausible and therefore cannot remedy any conflicts with the federal scheme.

      1.     Even accepting Defendant's rewriting of SF2340 to preclude its application to noncitizens with lawful immigration status, conflicts are inevitable whenever Iowa enforces the law.

      **First**, in every case, SF2340 interferes with Congress' statutory scheme by giving unilateral control to the State and preventing federal authorities from exercising discretion over the prosecution, processing, and removal of covered noncitizens. Congress gave federal immigration officials "broad discretion" as a "principal feature" of the immigration system. *Arizona*, 567 U.S. at 396. Federal discretion "implicates not only normal domestic law enforcement priorities but also foreign-policy objectives." *United States v. Texas*, 599 U.S. 670, 679 (2023) (internal quotation omitted). Discretion allows federal immigration authorities to distinguish between, for example, noncitizens with "children born in the United States" and "smugglers or [noncitizens] who commit a serious crime," while also weighing whether to remove people to countries "mired in civil war [or] complicit in political persecution." *Arizona*, 567 U.S. at 396. Congress gave federal

38

authorities a range of tools, including discretion to bring criminal reentry charges, to place previously removed noncitizens in removal proceedings, to afford humanitarian relief, to reopen or rescind old orders of removal, and to make decisions about where removable noncitizens should actually be sent. *See supra* at 4-8. These tools allow the federal government to balance complex and interrelated domestic and international policies and priorities.

Under SF2340, federal officials lose their control over this carefully calibrated scheme. Instead, Iowa can now imprison and remove individuals whom the federal government may want to prosecute itself or place in removal proceedings. Or Iowa can imprison and remove people whom the federal government has decided should *not* be the subject of any enforcement action. *See Arizona*, 567 U.S. at 408. Federal officials thus no longer "retain complete discretion to decide whether and when to pursue removal proceedings." *Keller*, 719 F.3d at 944.

Iowa's law also requires noncitizens to return to one specific country—the country from which they entered the United States—or face further criminal penalties. Iowa Code §§ 718C.4(3),(4), 718C.5. This eliminates federal authorities' ability to decide where to send removable noncitizens—a complex determination with foreign policy implications. *See* 8 U.S.C. 1231(b); *Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 348 (2005). As the district court held, this is a

39

blatant conflict with the detailed rules about which countries someone may be sent to—rules that incorporate considerations including a noncitizen's country of birth, place of residence, and nationality, as well as the federal government's relationships with sovereign nations. *See* App.Vol.I.244; R.Doc.51, at 22; 8 U.S.C. § 1231(b); 8 C.F.R. § 241.15; *see also Texas*, 97 F.4th at 291 ("Congress has identified the . . . process for selecting the country to which noncitizens may be removed.").

    *Arizona*'s conflict analysis also forecloses Defendant's assertion that Iowa can independently "make[] it a crime to violate federal criminal immigration law in Iowa." Appellant Br. at 62. *Arizona* rejects the idea that states can enforce federal immigration law on their own, without federal "direction and supervision." 567 U.S. at 413. SF2340 is therefore conflict preempted for the same reasons as Section 6 in *Arizona*, which authorized state officers to arrest noncitizens based on probable cause of removability. *Id.* at 407-10. Under SF2340, as with Section 6, "state authority could be exercised without any input from the Federal Government," and therefore "would allow the State to achieve its own immigration policy" and lead to "unnecessary harassment" of noncitizens "who federal officials determine should not be removed." *Id.* at 408; *see id.* at 413 ("[I]t would disrupt the federal framework to put state officers in the position of holding aliens in custody for possible unlawful presence without federal direction and

40

supervision."). *Arizona* makes clear that states, acting alone, cannot even *arrest* people for violating federal standards; *a fortiori* they cannot unilaterally arrest, prosecute, imprison, and remove people for violating federal standards. *See id.* at 408-10.

Defendant's reliance on *Garcia* is unavailing. There, the Supreme Court upheld a state prosecution under a generally applicable fraud statute, for falsifying a state tax withholding document. While there was some tangential overlap with the federal employment verification scheme, the Court held that the state prosecution was "consistent with federal interests." *Id.* at 212. This case is completely different, because Iowa is attempting to regulate a core immigration matter. Prosecuting unlawful reentry, unlike the tax-withholding identity fraud at issue in *Garcia*, is historically an area of exclusive federal regulation, one that is tied up with the executive's authority over foreign affairs. *See U.S. v. Carrillo-Lopez*, 68 F.4th 1133, 1150 (9th Cir. 2023) (discussing federal statutes imposing penalties on those who reenter after deportation dating to the 1920s). As such, Defendant cannot cite any case from the past 150 years where a state has succeeded in exercising such power. *See* Appellant Br. at 61-63; *see supra* at 36-37 & n.11. Moreover, Plaintiffs' conflict preemption claims do not rely on the mere "overlap" between SF2340 and 8 U.S.C. § 1326. Rather, SF2340 displaces the carefully balanced statutory regime of federal control and discretion over entry and

41

removal, deprives noncitizens of their rights to seek federal relief against removal, and punishes people for doing what federal law allows. None of that was true of the identity fraud prosecutions in *Garcia*. *See* 589 U.S. at 211.

In sum, SF2340 "violates the principle that the removal process is entrusted to the discretion of the Federal Government." *Arizona*, 567 U.S. at 409.

**Second**, in every case, SF2340 impermissibly interferes with foreign affairs by inserting Iowa into the relationship between the United States and Mexico and other nations. As the district court noted, determinations about how to prosecute immigration crimes and execute removals to other nations "touch on foreign relations" and "must be made with one voice." *Arizona*, 567 U.S. at 409; *see id.* at 395 ("Immigration policy can affect trade, investment, tourism, and diplomatic relations for the entire Nation."); *see also* App.Vol.I.244; R.Doc.51, at 22. Here, the risk that unilateral state immigration regulation could "embroil us in disastrous quarrels with other nations" is not theoretical, as Iowa proposes to order people to countries irrespective of nationality and without the consent of those sovereign states. *Chy Lung*, 92 U.S. at 280. And subjecting noncitizens to novel and additional state-created criminal penalties for federal immigration violations "may lead to harmful reciprocal treatment of American citizens abroad." *Arizona*, 567 U.S. at 395

42

Defendant's claim that SF2340 does not allow Iowa officials to physically remove noncitizens from the state misses the point, Appellant Br. at 29-30,[13] as the statute requires state judges to order noncitizens "to return to the foreign nation from which the person entered," on penalty of even more severe punishment. Iowa Code §§ 718C.4, 718C.5. For many would-be defendants, that will be Mexico. *See Texas*, 97 F.4th at 291; Appellant Br. at 5-6 (discussing border with Mexico). As the Supreme Court recently observed, even the federal government "cannot unilaterally return . . . migrants to Mexico" or other foreign sovereigns. *Texas*, 597 U.S. at 806. The Court noted that the federal government's efforts to negotiate such returns had "played a particularly outsized role in diplomatic engagements with Mexico, diverting attention from more productive efforts to fight transnational criminal and smuggling networks." *Id*. (internal quotation marks omitted). Thus, the Court reiterated that maintaining international relationships "requires the Executive Branch to ensure that enforcement policies are consistent with this Nation's foreign policy." *Texas*, 597 U.S. 805-6. Here, the interference with foreign policy is unavoidable. As the district court observed, the Mexican government has

---

[13] In arguing that SF2340 does not permit removals from Iowa, Defendant relies on the presumption that state statutes do not generally apply extraterritorially. Appellant Br. at 30-31. It is not clear what Defendant means by this, as SF2340's clear text requires noncitizens convicted in Iowa to return to a "foreign nation." Iowa Code § 718C.4(4). Regardless, Defendant failed to raise this argument below and therefore waived it. *Compare id. with* App.119-143; R.Doc.36; *see Oglesby v. Lesan*, 929 F.3d 526, 534 (8th Cir. 2019).

Appellate Case: 24-2263     Page: 53     Date Filed: 08/20/2024 Entry ID: 5426310

already expressed concerns about SF2340 to executive officials. App.Vol.I.227; R.Doc.51, at 6.

**Third,** in every potential prosecution, SF2340 frustrates Congress' intent by granting Iowa the authority to make unilateral decisions regarding a noncitizen's immigration status. "The federal government alone . . . has the power to classify non-citizens." *Farmers Branch, Tex.*, 726 F.3d at 536. Congress entrusted that power to "federal officers who have received training in the enforcement of immigration law." *Arizona*, 567 U.S. at 408; 8 C.F.R. §§ 239.1, 1003.1. These trained experts navigate the "labyrinth" of immigration law, *Lok v. INS*, 548 F.2d 37, 38 (2d Cir. 1977), and ensure consistent application. The new Iowa law places state officials in the "impermissible position" of enforcing state law "based on their immigration status [determinations] without federal direction and supervision." *Farmers Branch, Tex.,* 726 F.3d at 532 (citing *Arizona*, 567 U.S. at 413).

SF2340 requires Iowa officials untrained in immigration law, *see* App.Vol.I.94; R.Doc.9-6, ¶ 11, to determine whether noncitizens in Iowa have been "denied admission" or departed "while an order of exclusion, deportation, or removal is outstanding." Iowa Code § 718C.2(1). This Circuit has recognized that authorizing local officials to unilaterally make such determinations is impermissible. *See Keller*, 719 F.3d at 944. This analysis necessitates access to a person's complete immigration file, often housed at different federal agencies and

44

potentially going back decades, and requires the expertise to identify the legally significant records. *See* App.Vol.I.83; R.Doc.9-5, ¶ 29. It likewise requires an understanding of immigration law, including the meaning of "admission," *see Matter of Alyazji*, 25 I. & N. Dec. 397, 401 (BIA 2011) (discussing the many meanings of "admission"), and what constitutes a final order of removal, *see* 8 C.F.R. § 1241.1. Iowa officials are unequipped to make these determinations.

And while Defendant argues that state officers "may" obtain immigration status verifications from federal officials, *see* Appellant Br. at 53 (citing 8 U.S.C. § 1373(c)), there is no mention of any such process in SF2340, let alone a requirement. *See* Iowa Code §§ 718C.1-10.[14] Even more telling is SF2340's prohibition on abatement: forbidding abatement even where a federal determination regarding someone's status is pending means that state authorities can ignore ongoing federal proceedings to determine whether a person may remain in the country. *See* Iowa Code § 718C.6. Even if a "discretionary stay" were available, Appellant Br. at 33, 64, it would not eliminate the conflict, because such a stay is entirely at the whim of state actors.

---

[14] In *Keller*, this Court found a local ordinance that expressly *required* officials to verify an individual's status with the federal government before determining they were unlawfully present and thus ineligible to rent property not to be conflict preempted. 719 F.3d at 944-45. That law, unlike SF2340, not only mandated "deference to federal determinations of immigration status," it did not interfere with the federal government's discretion and control over entry and removal. *Id.*

45

2. Under the correct, plain text reading of SF2340, the statute conflicts with the congressional scheme for two additional reasons: it criminalizes conduct that the federal government authorizes; and it allows the removal of people with lawful status and those eligible for relief from removal. As discussed *supra* at 17-21, Defendant's alternative construction is not plausible, let alone "readily apparent." *See Boos v. Barry*, 485 U.S. 312, 330 (1988) ("[F]ederal courts are without power to adopt a narrowing construction of a state statute unless such a construction is reasonable and readily apparent.").

**First,** SF2340 conflicts with federal law by subjecting noncitizens to arrest, prosecution, and imprisonment for reentering with federal permission. As the court below held, the proper reading of SF2340 criminalizes people who return to the United States with federal consent, a category that Congress expressly excepted from the reach of the federal criminal offense, *compare* Iowa Code § 718C.2(1) *with* 8 U.S.C. § 1326(a)(2)(A). App.Vol.I.243; R.Doc.51, at 21. Thus, SF2340 impermissibly "prohibit[s] conduct expressly permitted by federal law." *Keller*, 719 F.3d at 943 (internal quotation marks omitted); *see* App.Vol.I.236-7, 243; R.Doc.51, at 14-15, 21. Even more than Section 5(C) of the Arizona law, SF2340 "is an obstacle to the regulatory system Congress chose." *Arizona*, 567 U.S. at 405-6; *see id.* at 406 (explaining that where "Congress decided it would be inappropriate to impose criminal penalties on" certain noncitizens, a "state law to

46

the contrary is an obstacle to the regulatory system Congress chose"); *Garcia*, 589 U.S. at 211 (where Congress "conferred a right to be free of criminal [] penalties . . . a state law making it a crime to engage in that conduct conflict[s] with this federal right"). Penalizing individuals for conduct authorized by the federal government is a significant "inconsistency" that represents a shocking "intrusion upon the federal scheme." *Arizona*, 567 U.S. at 402.

**Second,** SF2340 also purports to authorize the removal of people who obtained lawful status after having illegally reentered and those who are eligible for such status. As noted above, Congress has established various legal statuses that immigration authorities may grant noncitizens even if they have prior removal orders and unlawfully reentered the country. *See supra* at 6-7. Under this complicated web of statutes and federal regulations, many noncitizens with old deportation orders have a statutory right to continue living in the United States. *See, e.g., Lopez-Flores v. DHS*, 387 F.3d 773, 775-77 & n.2 (8th Cir. 2004) (granting petition for review by noncitizen who had been deported, re-entered, and was seeking adjustment of status via discretionary waiver). Congress designed a detailed administrative system for deciding when noncitizens already in the United States may seek and receive immigration status.

But SF2340 bypasses all the defenses to removal created by Congress and prevents individuals from seeking relief to which they may be statutorily entitled.

47

The law *requires* state actors to order removal—either at the start of a prosecution or after a conviction—even for noncitizens who have been granted legal status, are in pending proceedings, or may be eligible for relief under the INA, if they have a prior qualifying removal and are subsequently found in Iowa.  Iowa Code §§ 718C.2, 718C.4, 718C.6. Indeed, as the district court found, SF2340 doubles down on this conflict through its prohibition on abatement. *Id.* § 718C.6; *see* App.Vol.I.243; R.Doc.51, at 21. The result is state nullification of federal determinations about who can remain in the United States. *See Takahashi*, 334 U.S. at 419 (states "can neither add to nor take from the conditions lawfully imposed by Congress upon admission, naturalization and residence of aliens in the United States or the several states").

3. Defendant argues that Plaintiffs have failed to meet the standard for a facial challenge because certain applications of SF2340 might avoid some of the conflicts with the federal scheme. Appellant Br. at 64-67. But this ignores that SF2340 is field preempted and thus unconstitutional in every application. And the conflicts identified above apply every time SF2340 is enforced, because the first set of conflicts do not turn on the substantive scope of SF2340. As to the rest, Defendant's atextual narrowing construction is implausible.

Again, the Supreme Court's analysis in *Arizona* is instructive. As with Arizona's Section 6, SF2340 is facially preempted because it grants the state

48

control and eviscerates federal discretion over the removal process. *Arizona*, 567 U.S. at 408-09. And while the *Arizona* court rejected a facial challenge to Section 2(B), that provision is not comparable to SF2340. *Id.* at 415. Section 2(B) required state officers to attempt to determine the immigration status—by consulting with federal immigration authorities--of anyone they stopped "on some other legitimate basis" if there was reasonable suspicion that person was unlawfully present. *Id.* at 411. The Supreme Court concluded that merely authorizing communication between state and federal authorities did not violate congressional intent. *Id.* at 413-14; *accord Ga. Latino All. for Hum. Rts*., 691 F.3d at 1267. Defendant suggests that as with Section 2(B), there is "uncertainty" about what SF2340 means. Appellant Br. at 65. But like Section 6 and unlike Section 2(B), SF2340 does not require consultation with federal immigration authorities and instead permits Iowa officers to unilaterally arrest, prosecute, and remove noncitizens. There is no constitutional reading of the statute, "plausible" or otherwise, *id.*, and thus "no set of circumstances exists under which the law would be valid," *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397 (2024) (cleaned up).

Because there are no permissible applications of SF2340, a pre-enforcement, facial injunction is appropriate. *See id*. Defendant therefore finds no support in *Moody*, in which the courts below had failed to consider various potentially constitutional applications of the laws at issue. *Id*. Similarly, *Keller* is

49

inapposite, because the local provisions at issue there "neither determine[d] 'who should or should not be admitted into the country,' nor d[id] they more than marginally affect 'the conditions under which a legal entrant may remain.'" 719 F.3d at 940-41 (quoting *De Canas,* 424 U.S. at 354-55). Here, in contrast, SF2340 *directly* regulates entry and who may remain through "a parallel local process to determine an alien's removability." *Id.* at 942. Plaintiffs have therefore established there is no application of SF2340 that saves it from unconstitutionality.

### D.    Section 4 Cannot Be Severed

Defendant asks that SF2340's removal provisions be severed should this Court find that they alone are preempted, Appellant Br. at 67-68, but SF2340 is preempted in its entirety. The crime of State Illegal Reentry, standing alone, is preempted because it both operates in an exclusively federal field and conflicts with the federal scheme. *See supra* at 27-50. The offense impermissibly regulates entry, permits unilateral state enforcement of immigration law, negates federal discretion, and criminalizes conduct that federal law allows. *Id.* If permitted to take effect, Iowa "would have the power to bring criminal charges against individuals for violating a federal law even in circumstances where federal officials in charge of the comprehensive scheme determine that prosecution would frustrate federal policies." *Arizona*, 567 U.S. at 402.

50

Even if the entire statute were not preempted, the removal provisions cannot be severed because they are an integral part of the statute's operation and critical to fulfilling the statute's legislative purpose. *See Am. Dog Owners Ass'n v. City of Des Moines*, 469 N.W.2d 416, 418 (Iowa 1991); Iowa Code §§ 718C.2(3), 718C.4, 718C.5. Removal is incorporated at the start of prosecution, with the threat of criminal penalties used to induce people to accept early removal. *See* Iowa Code §§ 718C.4(1)-(3). Such an order avoids prosecution and the cost to the State of incarceration and probation. And at the end of prosecution, the Order to Return is a *mandatory* penalty. *Id.* § 718C.4(4). It would dramatically alter the scope, penalties, and the fiscal impact of the law if Iowa could not order the departure of noncitizens under SF2340.

## III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN WEIGHING THE EQUITIES

### A. SF2340 Will Irreparably Harm Plaintiffs and the Public

Plaintiffs Jane Doe, Elizabeth Roe, Iowa MMJ, and MMJ members Anna and David will each suffer irreparable harm under SF2340. Similarly, the public at large will suffer harm because a state law that undermines "federal statutes and prerogatives" does not serve the public interest. *Alabama*, 691 F.3d at 1301.

First, SF2340 harms Ms. Doe and Ms. Roe because they face the risk of criminal prosecution and loss of liberty. App.Vol.I.65; R.Doc.9-3 ¶¶ 19-20; App.Vol.I.72; R.Doc.9-4 ¶ 17. They would also endure trauma from imprisonment,

51

family separation, and removal to a country where they would face significant hardship. App.Vol.I.65; R.Doc.9-3 ¶¶ 19-20; App.Vol.I.72; R.Doc.9-4 ¶ 17. Ms. Doe and Ms. Roe are both lawful permanent residents living in the United States with their U.S. family members. App.Vol.I.62-64; R.Doc.9-3 ¶¶ 4-15; App.Vol.I. 70-72; R.Doc.9-4 ¶¶ 5-15. Both were previously deported and waited years to return lawfully. App.Vol.I.62-64; R.Doc.9-3 ¶¶ 4-15; App.Vol.I. 70-72; R.Doc.9-4 ¶¶ 5-15. Now, they face the prospect of being separated from their families once again. App.Vol.I.62-64; R.Doc.9-3 ¶¶ 4-15; App.Vol.I. 70-72; R.Doc.9-4 ¶¶ 5-15. Additionally, Ms. Doe suffers from diabetes and hypertension and relies on the medical care available in the United States to remain stable. App.Vol.I.64; R.Doc.9-3 ¶ 18-19. The stress of prosecution, jail, removal, and family separation under SF2340 would exacerbate her anxiety and stress, further jeopardizing her health. *Id.* ¶ 19-20.

Iowa MMJ members Anna and David would also face prosecution and deportation under SF2340. Anna is an eighteen-year-old high school student who was granted asylum after being deported and returning to the United States as a child. App.Vol.I.80; R.Doc.9-5 ¶ 20. SF2340 subjects her to the threat of removal to Mexico, where she is not a citizen, has no family, and would be unable to graduate high school and pursue her chosen career. *Id* ¶ 2. David, a noncitizen brought to the U.S. without inspection as a child, was deported but returned

52

without lawful status to support his mother and his U.S. citizen sister, who suffers from serious health conditions. *Id.* ¶ 22. Prosecution and removal under SF2340 would separate him from his family and community.

Second, MMJ faces irreparable harm because SF2340 will force the organization to divert substantial resources to address the impacts of the law, impairing its ability to focus on core programs essential to its mission. *Id.* ¶¶ 25-35.  MMJ will need to re-screen clients for potential prosecution under SF2340, adapt its practice to represent clients facing prosecution, and assist those prosecuted under the law. *Id.* ¶¶ 29-35. This resource diversion will reduce staff availability for core immigration services, threaten grant funding, and hinder MMJ's ability to serve migrants eligible for federal immigration relief. *Id.* ¶¶ 34-35. The threat and impact on MMJ's legal services, mission, and resources constitutes irreparable harm. *See Heartland Acad. Cmty. Church*, 335 F.3d at 690 (finding irreparable harm based on "the threat to [an institutional plaintiff] and its mission"); *League of Women Voters of Mo. V. Ashcroft*, 336 F. Supp. 3d 998, 1005 (W.D. Mo. 2018) (finding irreparable harm where "non-profit organizations. . . diverted resources from other activities crucial to their missions in order to address" the harm).

Finally, the public, including MMJ's membership, faces irreparable harm under SF2340 because it encroaches on federal authority and targets noncitizens

Appellate Case: 24-2263    Page: 63    Date Filed: 08/20/2024 Entry ID: 5426310

regardless of their lawful status or if they are seeking status. *See* App.Vol.I.245-46; R.Doc.51, at 23-24. The district court's findings align with those of other courts, which have held that irreparable harm can occur when a state attempts to enforce its own immigration or foreign affairs policies, as these areas are preempted by federal interests that serve the broader public interest. *See Texas*, 97 F.4th at 295-96; *United States v. South Carolina*, 720 F.3d 518, 533 (4th Cir. 2013); *Texas*, 2024 WL 861526, at *38-40.

As the court below found, SF2340 also will harm impacted Iowans by removing noncitizens to countries where they are likely to face significant danger without adequate safeguards. *See* App.Vol.I.246; R.Doc.51, 24; *Nken v. Holder*, 556 U.S. 418, 436 (2009) (finding there is a public interest in preventing the wrongful removal of noncitizens to places where they face severe harm). If implemented, the law also threatens to damage the relationship between immigrant communities and law enforcement, reducing noncitizens' willingness to report crimes due to fear of prosecution and removal. App.Vol.I.86, 88; R.Doc. 9-5 ¶¶ 34, 42; App.Vol.I.95; R.Doc.9-6 ¶¶ 14-16; App.Vol.I.102, 104; R.Doc.9-7 ¶¶ 33, 44; App.Vol.I.109; R.Doc.9-8, ¶¶ 7, 10. This erosion of trust risks a rise in unreported and unprosecuted crimes, leaving communities more vulnerable to illicit conduct. *Id.* Each injury and harm to Plaintiffs and the public interest together indisputably support an injunction.

54

## B. Iowa Will Not Be Similarly Harmed

Iowa will not face similar harm if SF2340 is enjoined. While Defendant raises concerns about human and drug trafficking, it fails to explain why Iowa's existing criminal laws do not address these issues or how SF2340 is specifically tailored to mitigate them. Appellant Br. at 70; *cf. United States v. Benito*, 2024 WL 3296944, at *6 (N.D. Miss. July 3, 2024) ("[T]here's no evidence that undocumented immigrants are more dangerous than documented immigrants or citizens. Study after study indicates the opposite."). The district court correctly concluded that when a state law is likely preempted by federal law, the balance of harm and public interest generally favors granting injunctive relief, as states have no legitimate interest in enforcing laws that are preempted by federal law. App.Vol.I.246; R.Doc.51, at 224-25; *see also Bank One, Utah v. Guttau*, 190 F.3d 844,847-48 (8th Cir. 1999) (finding the state does not have a legitimate interest in enforcing laws that violate the Supremacy Clause); *Rodgers*, 942 F.3d at 458 (holding the state has no interest in enforcing laws deemed unconstitutional). Defendant concedes that the plain reading of SF2340 is unconstitutional. Appellant Br. at 26-27, 28. Consequently, Iowa's nonenforcement of SF2340 due to an injunction would not result in irreparable harm.

## CONCLUSION

The Court should affirm the district court's preliminary injunction order.

DATED: August 20, 2024          Respectfully submitted,

/s/ Emma Winger
Emma Winger
Michelle Lapointe
Suchita Mathur
AMERICAN IMMIGRATION COUNCIL
2001 L Street N.W., Suite 500
Washington, DC 20036
Phone: (202) 507-7512
ewinger@immcouncil.org;
mlapointe@immcouncil.org
smathur@immcouncil.org

Rita Bettis Austen, AT0011558
Shefali Aurora, AT0012874
Thomas Story, AT0013130
ACLU of Iowa Foundation Inc.
505 Fifth Avenue, Ste. 808
Des Moines, IA 50309-2317
Phone: (515) 243-3988
Fax: (515) 243-8506
rita.bettis@aclu-ia.org
shefali.aurora@aclu-ia.org
thomas.story@aclu-ia.org

Spencer Amdur
Cody Wofsy
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-0770
F: (415) 395-0950
samdur@aclu.org
cwofsy@aclu.org

Anand Balakrishnan
Wafa Junaid
Noor Zafar

56

Omar Jadwat
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
abalakrishnan@aclu.org
wjunaid@aclu.org
nzafar@aclu.org
ojadwat@aclu.org

*For Plaintiffs Iowa Migrant Movement for Justice, Jane Doe, Elizabeth Roe*

\* Admitted *pro hac vice*
\*\* *Pro hac vice* motion pending
\*\*\* *Pro hac vice* motion forthcoming

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g) and Local R. 25A, I certify the following:

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,876 words, excluding those parts exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because the brief has been prepared in Times New Roman 14-point font using Microsoft Word for Microsoft Office 365.

3.     This brief complies with the electronic filing requirements of Local R. 25A because the text of the electronic brief is identical to the text of the paper copies and because the electronic version of this brief has been scanned for viruses and no viruses were detected.

August 20, 2024

*/s/ Emma Winger*
Emma Winger
American Immigration Council
2001 L Street NW, Suite 500
Washington, DC 20036
Phone: (202) 507-7512
ewinger@immcouncil.org

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed with the Clerk using the appellate

CM/ECF system on August 20, 2024. All counsel of record are registered CM/ECF

users, and service will be accomplished by the CM/ECF system.

August 20, 2024

*/s/ Emma Winger*
Emma Winger
American Immigration Council
2001 L Street NW, Suite 500
Washington, DC 20036
Phone: (202) 507-7512
ewinger@immcouncil.org

59