IN THE
United States Court of Appeals for the Eighth Circuit

IOWA MIGRANT MOVEMENT FOR JUSTICE, *ET AL.*,
*Plaintiffs-Appellees*,

v.

BRENNA BIRD, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF IOWA,
*Defendant-Appellant*,

KIMBERLY GRAHAM AND ZACH HERRMANN,
*Defendants*.

On Appeal from the United States District Court
for the Southern District of Iowa
4:24-cv-00161-SHL
(The Honorable Stephen H. Locher)

## APPELLANT'S PETITION FOR REHEARING EN BANC

<table>
<tr>
<td>

BRENNA BIRD
Attorney General of Iowa

ERIC WESSAN
*Solicitor General*

PATRICK C. VALENCIA
*Deputy Solicitor General*

November 20, 2025

</td>
<td>

BREANNE A. STOLTZE
*Assistant Solicitor General*
1305 East Walnut Street
Des Moines, Iowa 50319
(515) 823-9117 / (515) 281-8770
eric.wessan@ag.iowa.gov
patrick.valencia@ag.iowa.gov
breanne.stoltze@ag.iowa.gov

*Counsel for Defendant-Appellant*

</td>
</tr>
</table>

## INTRODUCTION

Defendant-Appellant requests rehearing en banc of this Court's panel opinion, *Iowa MMJ v. Bird*, 2025 WL 2984379 (8th Cir. Oct. 23, 2025), affirming the district court's grant of a preliminary injunction.

Facial challenges are "hard to win." *Moody v. NetChoice, LLC,* 603 U.S. 707, 723 (2024). There must be "no set of circumstances" under which the law is valid. *United States v. Veasley*, 98 F.4th 906, 909 (8th Cir. 2024) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). If any application is constitutional, "then facially speaking, the statute is too." *Id*.

The panel misapplied *Veasley* and *Salerno*. Finding some unconstitutional, obstacle-preempted applications, the panel held that Senate File 2340 may never be enforced. It held that SF2340 is conflict preempted because it "creates a parallel scheme of enforcement for immigration law" as to "illegal alien[s] whom federal officials have exercised their discretion not to bring an enforcement action against." Op.18. Iowa's enforcement "could be exercised without any input" from federal officials and "could" result in "unnecessary harassment of some aliens who federal officials determine should not be removed." Op.19 (cleaned up). Thus, as the panel saw it, an illegal alien under Iowa's law

1

"may be ordered to return to a country" that federal officials decided the alien must not be sent, a decision federal officials "may have postponed." Op.23-24.

But the panel never assessed whether Iowa's law creates an obstacle to federal enforcement discretion in *every* application. Iowa concedes that it cannot prosecute any person under this law who have received federal consent. Whether that is because, as the State contends, the law does not criminalize their conduct or, as Plaintiffs contend, due to conflict preemption is beside the point. The denominator of all SF2340's applications includes many lawful enforcement actions. And Defendant needs only one to survive under *Veasley/Salerno*. 98 F.4th at 909. Contrary to *Salerno* and its progeny in the Supreme Court and this Court, the panel never decided that question. Fed. R. App. P. 40(b)(2)(A), (B).

On the merits, the panel applied a new principle of law: Mere overlap of state and federal immigration law requires a facial injunction on account of obstacle preemption. To reach that novel conclusion, the panel misapplied *Arizona v. United States*, 567 U.S. 387 (2012). State laws do not "somehow conflict with [federal] by incorporating it." *Zyla*

*Life Scis., LLC. v. Wells Pharma of Houston, LLC*, 134 F.4th 326, 331 (5th Cir. 2025). The panel's discretion-based obstacle preemption analysis risks invalidating enforcement of "many state statutes [that] incorporate federal criminal requirements." *Id.* at 334-335. When the State prosecutes crimes relating to felon-in-possession or controlled substances, is that creating an obstacle to federal enforcement discretion? No. This Court should grant rehearing en banc to prevent conflict with *Arizona* and *Zyla*. Fed. R. App. P. 40(b)(2)(A), (C).

Even if injunctive relief were proper, the panel failed to apply the Supreme Court's commands to avoid facially invalidating state laws despite a state-law severability requirement, *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 506 & n.14 (1985), and to avoid granting universal, non-party-specific relief, *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). Fed. R. App. P. 40(b)(2)(A).

On rehearing, the en banc court should vacate the preliminary injunction.

# ARGUMENT

## I. The Panel Failed To Apply *Salerno*'s Facial-Injunction Analysis.

This Court should correct the panel's facial analysis, which failed to determine whether any part of SF2340 has at least one constitutional application. The panel facially enjoined the law because, the panel concluded, the law "could," sometimes, create an obstacle to federal non-enforcement priorities. But that is not what *Salerno*, *NetChoice*, and other cases require.

### A. *Salerno* facial-injunction analysis.

Plaintiffs' decision to litigate a case as a facial challenge "comes at a cost." *NetChoice*, 603 U.S. at 723. To win, there must be "no set of circumstances" under which the law is valid. *See Veasley*, 98 F.4th at 909 (quoting *Salerno*, 481 U.S. at 745). If any application is constitutional, "then facially speaking, the statute is too." *Id.*; *see also United States v. Charles*, No. 24-3155 (8th Cir. Nov. 20, 2025) (holding that existence of non-bearable machine guns defeats facial Second Amendment challenge of law regulating machine guns). But where, as here, the law may be constitutionally enforced, a facial challenge fails. *See Arizona*, 567 U.S. at 415 ("[I]t would be inappropriate to assume [the law] will be construed

in a way that creates a conflict with federal law."). Hypotheticals about whether there are any unconstitutional applications are not enough to support facial injunctive relief—the operative question is whether there are no constitutional applications.

Courts do not assume unconstitutional enforcement. When there are two plausible readings of a statute, one being constitutional, courts exercise caution and allow the law to play out. *See Keller v. City of Fremont*, 719 F.3d 931, 945 (8th Cir. 2013); *Zyla*, 134 F.4th at 326. That gives "state courts . . . an opportunity to construe" the law and demonstrate its constitutional application and enforcement. *Arizona*, 567 U.S. at 416.

More, Iowa law prohibits ignoring a plausible interpretation of a statute that would allow its application to be constitutional. "In enacting a statute, it is presumed that [c]ompliance with the Constitutions of the state and of the United States is intended." Iowa Code § 4.4(1). "[I]t is presumed that . . . [a] just and reasonable result is intended." *Id.* § 4.4(3). The "[p]ublic interest is favored over any private interest." *Id.* § 4.4(5). And Iowa's laws are presumed severable. *Id.* § 4.12. This Court has

Appellate Case: 24-2263     Page: 6     Date Filed: 11/20/2025 Entry ID: 5580624

recognized the force of those enactments. *See GLBT Youth Task Force v. Reynolds*, 114 F.4th 660 670-671 (8th Cir. 2024).

Iowa may not usurp federal law. And nothing in federal law prohibits Iowa from complementing federal law through parallel enactments. *See Zyla*, 134 F.4th at 338 ("[Federal] statutes do not preclude parallel or non-parallel state regulation of the same conduct. If they were read to do so, the States' power over criminal and tort law would dissipate.").

And Defendant's interpretation is a fair reading of the statute. *State v. Abrahamson*, 696 N.W.2d 589, 593 (Iowa 2005) ("If the law is reasonably open to two constructions . . . the court must adopt the interpretation that upholds the law's constitutionality."). Under Defendant's reading, SF2340 has constitutional applications.

SF2340 mirrors federal law while avoiding state judges impermissibly making immigration-status determinations. Consider section 2. Applying traditional tools of interpretation, it does not apply to aliens who have received federal consent to reenter the country, because they have not reentered illegally. Section 2's usage of the phrase "enters . . . under any of the following circumstances" means that, at the

6

time the alien is arrested, their prevailing status is "denied admission," "excluded," "removed," or "departed," the alien committed illegal reentry. Iowa Code § 718C.2. An alien who was deported years ago but has since received federal permission to reenter with a visa would not say she entered the country as a "deported" person; she would say she entered as a "visa holder." Her present lawful federal status matters.

Applying that interpretation, where Iowa and the federal government alike choose to enforce their crime of illegal reentry against an illegal alien—previously deported who then reentered without permission and who presently lacks federal consent—then there would be no obstacle to federal officials' discretionary non-enforcement, no less any true conflict between Iowa and federal law. Because that application of section 2 is constitutional, "facially speaking, the statute is too." *Veasley*, 98 F.4th at 909.

**B.    The panel facially enjoined SF2340 based on finding some—not all—of its applications obstacle preempted.**

The panel assumed Defendant's interpretation of the law then held that SF2340 "is still an obstacle to the exercise of the discretion that Congress gives federal officials." Op.17. The panel reasoned that mere overlap between Iowa and federal law requires a facial injunction based

7

on obstacle preemption because Iowa's enforcement "could be exercised without any input" from federal officials and "could" result in "unnecessary harassment of some aliens who federal officials determine should not be removed." Op.19 (cleaned up).

But that violates *Veasley* and *Salerno*. Turning facial injunctions on their head, the panel found that the law may not apply to lawful permanent residents or people with final decisions withholding removal and enjoined SF2340's application to all illegal aliens, even those in neither category. If any lawful permanent resident, for example, is prosecuted—against Defendant's view of the law's scope—then that person may receive individual relief.

Plaintiffs here sought a facial injunction of SF2340 in its entirety. That litigation choice means there must be more than a possibility of conflict or obstacle. There must be conflict or obstacle in every application of the law.

Consider a circumstance where federal enforcement aligns entirely with Iowa's enforcement of SF2340—where federal officials exercised their discretion to arrest an illegal alien, where none of the federal exceptions the panel found missing from SF2340 were at play, where the

8

President stated he would not pardon the illegal alien's federal conviction, and where Iowa received input and approval from federal officials before enforcing its state crime of illegal reentry against that illegal alien, and where the federal government ordered the illegal alien to be deported to the country they entered from. Op.16-20 (discussing series of potential conflicts with federal enforcement). Where is the conflict or obstacle that SF2340's enforcement imposes on federal law?

The panel never explained the conflict there. It analyzed whether the state law *could* in some circumstance create an obstacle or conflict with federal discretion. But it should have considered whether, in *every* application, SF2340 conflicts with federal law. And that is not the panel's fault—that burden lies with Plaintiffs. Plaintiffs cannot meet that burden.

## C. There is no preemption exception to injunctive relief principles.

The panel reasoned that where there is any preempted application, then the entire law should be facially enjoined.

But one preempted application does not necessitate facial relief. Indeed, the Supreme Court is no stranger to as-applied injunctive relief based on preemption. Consider *Gobeille v. Liberty Mutual Insurance*,

9

where a state law covered ERISA and non-ERISA plans. The state law "as applied to ERISA plans" was preempted. 577 U.S. 312, 321 (2016). But the law's non-preempted applications to non-ERISA plans remained enforceable. *Id.* Granting as-applied relief acknowledges the distinction between the law's constitutional and unconstitutional applications.

The same principles apply in immigration-related preemption cases. Consider *Arizona*, where the Court rejected a pre-enforcement challenge but left the door open to preemption challenges "to the law as interpreted and applied after it goes into effect," suggesting that as-applied preemption challenges are available. 567 U.S. at 415; *see also Kansas v. Garcia*, 589 U.S. 191, 208, 211 (2020) (rejecting as-applied preemption claims).

## II. *Arizona* and *Zyla* Confirm That Overlap With Federal Law is Not Conflict.

Preemption is powerful and must be narrowly construed. *See Arizona*, 567 U.S. at 398-401. "[T]he historic police powers of the States [a]re not to be superseded" unless implied preemption "was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). One such historic police power is the "power to exclude," which "has long been recognized as inherent in sovereignty." *Arizona*, 567

Appellate Case: 24-2263     Page: 11     Date Filed: 11/20/2025 Entry ID: 5580624

U.S. at 417 (Scalia, J. concurring in part and dissenting in part); *see Mayor, Alderman & Commonalty of City of N.Y. v. Miln*, 36 U.S. (11 Pet.) 102, 130-132 (1837).

Federal law should conflict-preempt state law only when the two conflict. Indeed, federal enforcement discretion does not "clear[ly] and manifest[ly]" preempt that historic State police power. *Kansas*, 589 U.S. at 208, 212; *see* Op.10 (quoting *Kansas*, 589 U.S. at 212). "Invoking some brooding federal interest or appealing to a judicial policy preference should never be enough to win preemption of a state law." *Va. Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019).

And SF2340 does not conflict with federal law—and certainly does not conflict in all its applications. Congress created an illegal reentry crime, and its enforcement is mandatory. 8 U.S.C. § 1326 (persons in violation "shall" be punished). Unlike federal civil immigration laws, like those analyzed in *Arizona*, 567 U.S. at 400-410, which may be imbued by Congress with discretion and exceptions, Congress made the federal illegal reentry crime mandatory.

And SF2340 is an analogue to that federal crime. SF2340 makes it a crime to enter, attempt to enter, or be found in Iowa after having been

11

"excluded, deported, or removed," or having departed the United States "while an order of exclusion, deportation, or removal is outstanding." Iowa Code § 718C.2(1). Federal prosecutorial discretion *not* to enforce an otherwise mandatory crime does not conflict with Iowa's decision to enforce.

The panel assumed Defendant's interpretation of the law and held SF2340 obstacle preempted because SF2340 enacted a parallel state scheme that could, in some applications, run counter to federal officials' non-enforcement priorities. So this case comes down to obstacle preemption—a species of implied conflict preemption that applies only when there is no actual conflict between a State and federal law.

On the one hand, the panel determined that SF2340 creates an obstacle to enforcement discretion Congress gave to federal officials. On the other hand, the panel disregarded federal officials' enforcement discretion where, here, the United States dropped its lawsuit against SF2340 and entered into a section 287(g) agreement with Iowa. Op.21-22. That dissonance highlights the folly of deferring to federal enforcement discretion to assess the scope of preemption—but if federal enforcement discretion does play a role in the analysis, then the fact that

12

federal officials' exercise of discretion now favors SF2340 should weigh into the analysis too.

Not only does the United States no longer contest SF2340's constitutionality, but it told another court that a law enacting a parallel state illegal reentry crime is neither field nor conflict preempted. *See* Amicus Brief for the United States, *Fla. Immigrant Coal. v. Att'y Gen.*, No. 25-11469, 2025 WL 1924781, at *9-*20 (11th Cir. July 7, 2025). And like with Florida, it has entered into a Section 287(g) agreement with Iowa authorizing Iowa to enforce immigration law. There is no conflict between federal and Iowa immigration laws. If there is, the federal government may always decide to seek an injunction against Iowa's enforcement of its law—but it withdrew its suit here.

## A. SF2340's complementary overlap with federal immigration law does not obstruct federal enforcement discretion.

"The mere fact that [SF2340] 'overlap[s]' with federal law 'does not even begin to make a case for conflict preemption.' States generally are free to criminalize conduct also proscribed by Congress, and laws targeting illegal immigration are no exception." *Id.* at *17 (quoting *Kansas*, 589 U.S. at 211-212) (citations omitted). State laws do not

13

"somehow conflict with [federal] by incorporating it." *Zyla*, 134 F.4th at 331.

Iowa can complement federal criminal immigration law harmoniously without obstructing enforcement discretion in all applications. *Id.* at 333 ("States may have a legitimate interest in punishing or providing redress for wrongs even if federal law already does so. The Federal Government is not the only one with an interest in criminalizing murder or rape."). Indeed, that is within Iowa's historic police powers. *See Miln*, 36 U.S. at 130-132; *Arizona*, 567 U.S. at 417 (Scalia, J. concurring in part and dissenting in part); *United States v. Texas*, 144 F.4th 632, 719, 725-733 (5th Cir.) (Oldham, J., dissenting) (concluding that, because of State's historic police powers in regulating immigration, obstacle preemption is improper basis to facially enjoin a state law that overlaps with federal law), *vacated pending reh'g en banc*, 150 F.4th 656 (5th Cir. 2025).

Finding obstacle preemption based on mere overlap with federal law has "staggering" implications. *Zyla*, 134 F.4th at 336. That would obstacle preempt "many state statutes [that] incorporate federal criminal requirements." *Id.* at 334-335 & nn.5-7 (collecting statutes). An example

14

illustrates the point. Both Iowa and the federal government make it a crime for a convicted felon to own a firearm—including persons convicted of a felony in federal court. *See* Iowa Code § 724.26; 18 U.S.C. § 922(g)(1). Enforcement-discretion obstacle preemption suggests that any Iowa prosecution for such a violation infringes on the federal government's supposed decision to not prosecute. But that is wrong. Nor can it be the case that the federal government not prosecuting a person for illegal reentry means that Iowa's enforcement of violations for identical factual elements infringes on the federal government's authority.

Yet the panel rejected *Zyla*'s straightforward reasoning. That was wrong for two reasons. *First*, to distinguish *Zyla*, the panel adopted a novel theory of obstacle preemption that amounts to backdoor field preemption. Laws overlapping with federal laws in a state's "traditional prerogative" like "police drug safety" are permissible. Op.18-19 (cleaned up). "But not here," where the state law overlaps with federal immigration law it is obstacle preempted, because "[i]mmigration is not a traditional subject of state regulation." Op.18-19. But much of immigration regulation—aside from alien registration—is within States' historic police powers. *See Miln*, 36 U.S. at 130-132. The panel's analysis

effectively finds SF2340 field preempted. Yet such a broad theory of field preemption is impossible to reconcile with precedents limiting immigration-related field preemption to alien registration. *Arizona*, 567 U.S. at 401; *Kansas*, 589 U.S. at 210.

*Second*, the panel contradicted its overstatement in that same paragraph—at minimum, the panel's follow-up analysis conflicts with *Zyla*. The panel explained that mere overlap between SF2340 and federal law requires an obstacle-preemption-based facial injunction because Iowa's enforcement "could" happen "without any input" from federal officials" and because section 2 of SF2340 "allow[s] state officers to prosecute aliens who federal officials have not decided to arrest." Op.19. But that is impossible to square with *Zyla*. The Fifth Circuit understood that, so long as there is no conflict on the face of the state and federal law, federal statutes granting the federal Executive enforcement discretion "do not preclude parallel or non-parallel state regulation of the same conduct." *Zyla*, 134 F.4th at 338.

## B. The panel conflicts with *Arizona*.

The panel here applied *Arizona* contrary to the Supreme Court's analysis of the state laws challenged in *Arizona*. The panel feared that

16

SF2340 might "allow the State to achieve its own immigration policy." Op.18 (quoting *Arizona*, 567 U.S. at 408). But a close look at the state laws *Arizona* held preempted shows they are distinguishable.

Although *Arizona* rejected state criminal penalties, its context matters. *See id.* at 400-410. *Arizona* considered four state laws and found only one (related to alien registration) field preempted. *Id.* at 402-403. *Arizona* recognized that where the State is not operating in an occupied field, "a State may make violation of federal law a crime." *Id.* at 402.

*Arizona* held two other sections obstacle preempted. And its reasons are key: Unlike here, those state laws criminalized conduct that was not a federal crime, thus frustrating Congress's decision to treat those violations civilly. *Id.* at 405, 407. One section criminalized "removability," a federally civil—rather than criminal—status. *Id.* at 407. The other made it illegal for an alien to knowingly apply for, solicit, or perform work, where Congress specifically chose not to make unauthorized work a criminal offense. *Id.* at 403-405.

In contrast here, Congress criminalized illegal reentry with mandatory language—persons in violation of illegal reentry law "shall" be punished. 8 U.S.C. § 1326. Unlike the obstacle-preempted laws in

17

*Arizona*, SF2340 neither exceeds federal law nor criminalizes something not already federally criminal.

Thus, Iowa is not creating its own immigration policy—it is supporting federal immigration policy by reflecting federal law. As in other contexts, "[t]he Federal Government has limited resources. Thus, it often welcomes state aid in enforcing shared legal norms." *Zyla*, 134 F.4th at 334. Indeed, "there are now many instances in which a prosecution for a particular course of conduct could be brought by either federal or State prosecutors." *Kansas*, 589 U.S. at 212.

Iowa's Section 287(g) agreement with the federal government further highlights State-federal cooperation on immigration in Iowa. And underscores the countless applications of SF2340 that do not create an obstacle to federal immigration officials' discretion. Iowa is now empowered to "enforce limited immigration authority with ICE oversight during their routine police duties." Delegation of Immigration Authority Section 287(g) Immigration of Nationality Act, available at https://perma.cc/539QWQEW.

Because Iowa law enforcement is now authorized to enforce federal immigration law, even if under federal control as the panel emphasized,

Appellate Case: 24-2263     Page: 19     Date Filed: 11/20/2025 Entry ID: 5580624

Op.21, there will be applications of SF2340 that do not conflict with the discretion that federal immigration officials may exercise. After all, Iowa's illegal reentry crime complements federal immigration law. And now Iowa has express authorization to enforce federal immigration law. So long as Iowa law enforcement maintain compliance with the Section 287(g) agreement and elect to enforce both SF2340 and federal immigration law, there would be—and could be—no conflict between Iowa and federal law in those arrests and prosecutions. The federal government deputized Iowa to arrest illegal aliens for violating immigration law, so there are now countless applications of SF2340 where Iowa's "own immigration policy" is one in the same with the federal government's immigration policy. SF2340 creates no obstacle.

## III. Any Injunctive Relief Should Be Narrowed to Party-Specific Relief as to only the Law's Preempted Applications.

### A. The panel disregarded the role severability should play in the facial-injunction analysis.

Where a State imposes a severability requirement, the Supreme Court determined that "facial invalidation of the statute [is] . . . improvident." *Brockett*, 472 U.S. at 506 & n.14. If courts decline to vacate a facial injunction entirely, they at least preserve the law's

constitutional applications, despite any unconstitutional overbreadth. *Brockett*, 472 U.S. at 506.

So here, for example, if section 2 has constitutional applications but another SF2340 section is fully preempted, then any injunction should, at most, extend to Defendant's enforcement of only the latter section. *See Brockett*, 472 U.S. at 506 & n.14; Iowa Code § 4.12. But because the panel failed to consider whether even section 2 has any constitutional applications, it never considered whether it should vacate the facial injunction as to any individual SF2340 section.

## B. The panel should not have delegated to the district court its duty to apply *CASA* and limit the injunction to party-specific relief.

Federal courts "resolve cases and controversies consistent with the authority Congress has given them." *CASA*, 606 U.S. at 861. Congress did not grant federal courts the authority to "universally enjoin the enforcement of an executive or legislative policy." *Id.* at 839. Rather, an injunction can grant complete relief to each plaintiff with standing to sue. *Id.* at 861. Universal injunctions thus are likely error. There is no immigration exception to those fundamental principles.

20

Plaintiffs would still receive complete relief from a narrowed, party-specific injunction. "Extending the injunction to cover all other similarly situated individuals would not render [Plaintiffs'] relief any more complete." *Id.* at 853.

There is no need to delay *CASA*'s application here. There are no facts to develop as to complete relief. Other courts of appeals have applied *CASA*'s "complete-relief principle for crafting injunctive relief" to cases pending before *CASA* and before the district court had the chance to apply *CASA*. *See, e.g.*, *Immigrant Defs. L. Ctr. v. Noem*, 2025 WL 2080742, at *15 (9th Cir. July 18, 2025). The panel should have too.

## CONCLUSION

For these reasons, this Court should grant rehearing en banc and vacate the district court's grant of a preliminary facial injunction.

November 20, 2025

Respectfully submitted,

BRENNA BIRD
Attorney General of Iowa

*/s/ Eric Wessan*
ERIC WESSAN
*Solicitor General*

PATRICK C. VALENCIA
*Deputy Solicitor General*

BREANNE A. STOLTZE
*Assistant Solicitor General*

1305 East Walnut Street
Des Moines, Iowa 50319
(515) 823-9117 / (515) 281-5191
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov
patrick.valencia@ag.iowa.gov
breanne.stoltze@ag.iowa.gov

*Counsel for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), Fed. R. App. P. 40, Local R. 25A, and Local R. 35A, I certify the following:

1. This petition complies with the type-volume limitation of Fed. R. App. P. 40(d) because it contains 3,899 words, excluding those parts exempted by Fed. R. App. P. 32(f).

2. This petition complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because the petition has been prepared in Century Schoolbook 14-point font using Microsoft petition for Microsoft Office 365.

3. This petition complies with the electronic filing requirements of Local R. 25A because the text of the electronic petition is identical to the text of the paper copies and because the electronic version of this petition has been scanned for viruses and no viruses were detected.

November 20, 2025

*/s/ Eric Wessan*
ERIC WESSAN
*Solicitor General*

*Counsel for Defendant-Appellant*

23

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed with the Clerk using the appellate CM/ECF system on November 20, 2025. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

November 20, 2025

*/s/ Eric Wessan*
ERIC WESSAN
*Solicitor General*

*Counsel for Defendant-Appellant*