No. 24-2263

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

IOWA MIGRANT MOVEMENT FOR JUSTICE, et al.

Plaintiffs-Appellees,

v.

BRENNA BIRD, in her official capacity as Attorney General of Iowa,

Defendant-Appellant,

Kimberly Graham and Zach Herrmann,

Defendants.

On Appeal from the United States District Court
for the Southern District of Iowa
4:24-cv-00161-SHL

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
IN SUPPORT OF REHEARING EN BANC**

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
CHARLES E.T. ROBERTS
  *Attorneys*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1141*

# TABLE OF CONTENTS

                                                                                         **Page**

STATEMENT OF INTEREST AND SUMMARY ............................................................... 1

STATEMENT OF THE CASE ............................................................................................ 2

      A.      The federal prohibition on illegal entry and reentry ..................................... 2

      B.      Senate File 2340 .............................................................................................. 4

      C.      Prior proceedings ............................................................................................ 5

ARGUMENT ....................................................................................................................... 5

CONCLUSION .................................................................................................................. 10

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Arizona v. United States*,
 567 U.S. 387 (2012) ............................................................................... 6

*Brakebill v. Jaeger*,
 905 F.3d 553 (8th Cir. 2018) ................................................................. 2

*California v. Zook*,
 336 U.S. 725 (1949) ............................................................................... 8

*Chamber of Com. of the U.S. v. Whiting*,
 563 U.S. 582 (2011) ............................................................................... 6

*Gamble v. United States*,
 587 U.S. 678 (2019) ............................................................................... 8

*Gerling Glob. Reinsurance Corp. of Am. v. Gallagher*,
 267 F.3d 1228 (11th Cir. 2001) ............................................................. 7

*Gilbert v. Minnesota*,
 254 U.S. 325 (1920) ............................................................................... 8

*Kansas v. Garcia*,
 589 U.S. 191 (2020) .............................................................. 2, 6, 7, 8, 9

*Moody v. NetChoice, LLC*,
 603 U.S. 707 (2024) ............................................................................... 7

*National Pork Producers Council v. Ross*,
 598 U.S. 356 (2023) ............................................................................... 7

*Plyler v. Doe*,
 457 U.S. 202 (1982) ............................................................................... 8

*United States v. Bernard*,
 136 F.4th 762 (8th Cir. 2025) ............................................................... 7

*United States v. Iowa*,
 737 F. Supp. 3d 725 (S.D. Iowa 2024) .............................................. 5, 9

*United States v. Salerno*,
 481 U.S. 739 (1987).................................................................................7

*United States v. Texas*,
  144 F.4th 632 (5th Cir. 2025) .................................................................................. 9

*United States v. Veasley*,
  98 F.4th 906 (8th Cir.) ......................................................................................... 7

*Virginia Uranium, Inc. v. Warren*,
  587 U.S. 761 (2019) ............................................................................................. 6

*Washington State Grange v. Washington State Republican Party*,
  552 U.S. 442 (2008) ............................................................................................. 2

**Statutes:**

Immigration and Nationality Act (INA):
  8 U.S.C. § 1325(a) ........................................................................................... 1, 3
  8 U.S.C. § 1325(b) ............................................................................................... 3
  8 U.S.C. § 1326(a) ........................................................................................... 1, 3
  8 U.S.C. § 1326(a)(2) ........................................................................................ 3, 9
  8 U.S.C. § 1326(b)(1)–(2) ..................................................................................... 3
  8 U.S.C. § 1326(b)(3)–(4) ..................................................................................... 3
  8 U.S.C. § 1326(c) ............................................................................................... 3
  8 U.S.C. § 1357(g) ............................................................................................. 10

Iowa Code § 718C.2(1) ........................................................................................... 4

Iowa Code § 718C.2(2) ........................................................................................... 4

Iowa Code § 718C.4(3) ........................................................................................... 4

Iowa Code § 718C.4(4) ........................................................................................... 4

Iowa Code § 718C.5 ............................................................................................... 4

Iowa Code § 718C.5(1) ........................................................................................... 4

Iowa Code § 718C.6 ............................................................................................... 4

# STATEMENT OF INTEREST AND SUMMARY

The United States is responsible for the enforcement of the Nation's immigration laws. Accordingly, the United States has an interest in ensuring preemption principles are applied in a manner that preserves the federal government's primacy over the areas within its constitutional authority, including immigration, while preserving the ability of states to adopt complementary legislation that advances exceptionally important federal policies. The United States submits this *amicus* brief because the panel opinion misapplied preemption principles to affirm the district court's preliminary injunction of Iowa Senate File 2340 (SF2340 or the Act).

Iowa enacted SF2340 seeking to do its part to redress the crisis of illegal immigration. The law makes it a state crime for an alien to enter, attempt to enter, or be found in Iowa after having entered or reentered the United States in violation of the federal Immigration and Nationality Act's (INA) prohibitions on illegal entry and reentry. *See* 8 U.S.C. §§ 1325(a), 1326(a). The Act thus complements existing federal immigration law by punishing those within, or that come within, Iowa's regulatory reach who entered or reentered the country in violation of United States immigration law. Although the Act largely parallels the federal prohibitions on illegal entry and reentry, the district court preliminarily enjoined that law in all its applications on the ground that it is conflict preempted by the INA, and a panel of this Court affirmed. Those decisions are wrong, and the injunction should be reversed.

*En banc* review is warranted.

SF2340 is not conflict preempted. The statute's prohibitions *further* the purposes of federal immigration law. No different from a state criminal law that borrows from a federal statute to punish the same wrongdoing, Iowa's statute merely adds a state-level punishment for what federal law already proscribes, with respect to conduct (illegal immigration) that Congress wishes to prevent in full. The panel held this supplemental punishment facially preempted on the ground that it "could" or "might" entrench on the INA's exceptions or on the federal government's enforcement discretion in certain applications. But the mere "possibility that federal enforcement priorities might be upset is not enough to provide a basis for preemption." *Kansas v. Garcia*, 589 U.S. 191, 212 (2020). At a minimum, the Act does not conflict with federal law "in *all* of its applications," *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008); *see Brakebill v. Jaeger*, 905 F.3d 553, 558 (8th Cir. 2018) (noting that "facial challenges are disfavored"), which is enough to reject the panel's conclusions that the Act is likely *facially* conflict preempted.

The Court should grant rehearing *en banc* to resolve this conflict with Supreme Court precedent and correctly answer this question of exceptional importance.

## STATEMENT OF THE CASE

### A. The federal prohibition on illegal entry and reentry.

The INA prohibits aliens from unlawfully entering or reentering the United States. As to unlawful entry, the INA creates a straightforward criminal offense applicable to

2

> [a]ny alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact.

8 U.S.C. § 1325(a). An initial violation of this section is punishable by a fine or imprisonment up to 6 months (or both), and a subsequent violation by a fine and imprisonment for a term of "not more than 2 years." *Id.* Separate civil penalties may be imposed. *Id.* § 1325(b).

As to unlawful reentry, the INA imposes criminal liability on an alien who has "been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter … enters, attempts to enter, or is at any time found in, the United States." *Id.* § 1326(a). A violation is punishable by a fine and "not more than 2 years" in prison (or both). *Id.* However, the INA includes two narrow exceptions, (i) if the Attorney General has consented to a reapplication for admission, or (ii) if the alien establishes that such consent was not required. *See id.* § 1326(a)(2). The INA imposes a series of escalating sentences of incarceration for violators with prior convictions for certain offenses, *id.* § 1326(b)(1)–(2), or those who were previously removed or excluded from the United States under certain authorities, *id.* § 1326(b)(3)–(4). Finally, an alien who was removed prior to the completion of a term of imprisonment and reenters the country must be "incarcerated for the remainder of the sentence of imprisonment." *Id.* § 1326(c).

## B. Senate File 2340.

Governor Reynolds signed SF2340 into law in April 2024. The Act creates (i) a new criminal offense under Iowa law that largely parallels federal law's prohibitions on unlawful entry and reentry and (ii) a separate offense for failure to comply with a court order to enforce the first. *See* Iowa Code §§ 718C.2(1), 728C.5(1).

SF2340 reinforces the federal prohibition on illegal entry and reentry of unauthorized aliens. *See id.* § 718C.2(1). It provides that an

> alien commits an offense if the person enters, attempts to enter, or is at any time found in [Iowa] under any of the following circumstances: a. The person has been denied admission to or excluded, deported, or removed from the United States. b. The person has departed from the United States while an order of exclusion, deportation, or removal is outstanding.

*Id.* This offense is an aggravated misdemeanor but may be charged as a felony if the alien has certain prior convictions or satisfies other conditions. *Id.* § 718C.2(2).

Separately, the Act provides that upon conviction for violating § 718C.2(1), the state judge "shall enter … an order requiring the person to return to the foreign nation from which the person entered or attempted to enter." *Id.* § 718C.4(4). So too if the alien consents and other provisions are satisfied. *Id.* § 718C.4(3). Refusal to comply with such an order is a felony. *Id.* § 718C.5.

The Act also provides that "[a] court may not abate the prosecution of an offense under this chapter on the basis that a federal determination regarding the immigration status of the defendant is pending or will be initiated." *Id.* § 718C.6.

### C. Prior proceedings.

Plaintiffs—two individuals and a non-profit organization—filed this lawsuit in federal district court challenging SF2340 in May 2024. *Iowa Migrant Movement for Just. v. Bird*, No. 4:24-cv-00161 (S.D. Iowa). The United States under the prior administration also sued. *United States of America v. Iowa*, No. 4:24-cv-00162 (S.D. Iowa). The district court granted motions for preliminary injunctions in both cases in a combined decision, finding the Act conflict preempted. *United States v. Iowa*, 737 F. Supp. 3d 725 (S.D. Iowa 2024).

After the United States dismissed its action, a panel of this Court ultimately affirmed the preliminary injunction as to the other plaintiffs, contingent on certain modifications. *See* Op. 30–32. The panel held SF2340 facially invalid based on several applications it determined "could" conflict with federal law and its potential implementation. *See* Op. 16–25. Because of the Act's overlap with federal law in an area of federal primacy, the panel found the Act wholly preempted. *See id.*

Iowa petitioned for rehearing *en banc*. Pet. for Reh'g *En Banc* (Nov. 21, 2025).

## ARGUMENT

The panel misapplied fundamental principles of conflict preemption. It then compounded its error by allowing possible *as-applied* conflicts with federal law to justify the *facial* invalidation of a state law that is plainly congruent with federal law on the ground. The result was to disable Iowa from assisting the federal government with one of the most pressing policy challenges of our time. Rehearing *en banc* is warranted.

5

All agree that the INA does not expressly preempt SF2340. Rather, the panel held that Iowa's law is preempted *on its face* on the theory that all or nearly all of its *applications* necessarily conflict with federal law. Op. 16–25. But that is plainly untrue.

A state law may "conflict with federal law" when "compliance with both federal and state regulations is a physical impossibility," or "where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona v. United States*, 567 U.S. 387, 399 (2012) (quotation marks omitted). But conflict preemption "does not justify a freewheeling judicial inquiry into whether a state statute is in tension with federal objectives," as "such an endeavor would undercut the principle that it is Congress rather than the courts that pre-empts state law." *Chamber of Com. of the U.S. v. Whiting*, 563 U.S. 582, 607 (2011) (plurality opinion) (quotation marks omitted). As the Supreme Court has stressed, "[t]here is no federal preemption *in vacuo*," *Kansas v. Garcia*, 589 U.S. 191, 202 (2020) (quotation marks omitted), and "[i]nvoking some brooding federal interest or appealing to a judicial policy preference should never be enough to win preemption of a state law," *Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019) (plurality opinion). Rather, "a litigant must point specifically to a constitutional text or a federal statute that does the displacing or conflicts with state law." *Id.* (quotation marks omitted).

There can be no dispute that it is "possible" for individuals "to comply" with both federal law and Iowa's in most applications. *Kansas*, 589 U.S. at 210–11. That should have been the end of the panel's inquiry. The panel believed that the Act is

6

preempted because the INA contains two narrow exceptions and because enforcing the Act "might" conflict with federal enforcement priorities. Op. 18. But that is exactly the kind of "federal preemption *in vacuo*" that the Supreme Court has rejected. *Kansas*, 589 U.S. at 202. And at a minimum, SF2340 does not conflict with federal law *on its face*—such that "no set of circumstances [exists] under which [the Act] would be valid." *United States v. Veasley*, 98 F.4th 906, 909 (8th Cir.) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)); *see Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (reaffirming no-set-of-circumstances standard for all non-First Amendment cases). As this Court recently emphasized, to defeat a facial challenge, "the government must show only that [the statute] is constitutional in at least some of its applications." *United States v. Bernard*, 136 F.4th 762, 764 (8th Cir. 2025) (procedural history omitted).

**1.** SF2340 is entirely congruent with federal law in most of its applications. It strains credulity to suggest that the Act conflicts with federal law in *all* of its applications. It does not authorize any conduct forbidden by federal law, or forbid any conduct expressly authorized by federal law. Instead, it prohibits conduct that closely parallels conduct prohibited by the INA. Iowa's law is thus in harmony, not conflict, with federal law.[1]

---

[1] It is true that the Act differs from federal law in that it is triggered when an unauthorized alien enters Iowa, as compared to the country. But that is merely a reflection of constitutional limits on a state's jurisdiction. *See, e.g.*, *National Pork Producers Council v. Ross*, 598 U.S. 356, 376 n.1 (2023); *Gerling Glob. Reinsurance Corp. of Am. v. Gallagher*, 267 F.3d 1228, 1236 (11th Cir. 2001).

*Continued on next page.*

The mere fact that SF2340 "overlap[s]" with federal law "does not even begin to make a case for conflict preemption." *Kansas*, 589 U.S. at 211–12; *see id.* at 212 (mere "overlap" provides "no basis for inferring" a preemptive conflict). States generally are free to criminalize conduct also proscribed by Congress, and to attach additional penalties to those offenses. No one would doubt that states may adopt the elements of a federal crime as their own and add penalties for violations—a prohibition on felons possessing firearms, for example. *Cf. Gamble v. United States*, 587 U.S. 678 (2019).

Laws targeting illegal immigration are no exception. The Supreme Court has said so explicitly: "Despite the exclusive federal control of this Nation's borders, we cannot conclude that the States are without any power to deter the influx of persons entering the United States against federal law, and whose numbers might have a discernible impact on traditional state concerns." *Phyler v. Doe*, 457 U.S. 202, 228 n.23 (1982); *accord Gilbert v. Minnesota*, 254 U.S. 325, 331 (1920) ("[T]he state is not inhibited from making the national purposes its own purposes…." (quotation marks omitted)); *California v. Zook*, 336 U.S. 725, 735 (1949) (similar).

**2.** The panel opinion failed to identify any conflict that could justify relief in this *facial* challenge. The panel reasoned primarily that SF2340 conflicts with the INA's limited exceptions and with principles of federal enforcement discretion. *See* Op. 16–20, 25–27.

---

The United States does not address the portions of the panel's opinion regarding the Act's removal provisions. *See* Op. 22–25.

The panel's exception rationale does not justify facial relief for two key reasons. First, Iowa maintains that its law, properly construed, accounts for those exceptions. *See* Op. 16–17. Second, even if Iowa's interpretation of its statute is rejected, any conflict between the narrow INA exceptions and SF2340 could be addressed in *as-applied* challenges. Those situations—under 8 U.S.C. § 1326(a)(2)—would be uncommon.[2] They are hardly a basis for preempting Iowa's Act *on its face*.

The panel's federal-enforcement-discretion rationale is foreclosed by *Kansas*: "the possibility that federal enforcement priorities might be upset is not enough to provide a basis for preemption." 589 U.S. at 212; *see United States v. Texas*, 144 F.4th 632, 727 (5th Cir. 2025) (Oldham, J., dissenting) (procedural history omitted). Only federal *law* can have preemptive effect—"the criminal law enforcement priorities or preferences of federal officers" cannot. *Kansas*, 589 U.S. at 212.[3]

In all events, here the enforcement priorities of the United States and Iowa align—both favor maximum enforcement of the immigration laws to deter illegal

---

[2] To the extent that individual plaintiffs establish qualification for an INA exception, the appropriate remedy would, at most, have been to hold Iowa's Act preempted as applied to those individuals. *See Iowa*, 737 F. Supp. 3d at 747–48.

[3] If a state sought to regulate on a subject where the federal agency with statutory authority had affirmatively chosen not to prohibit certain conduct (or had adopted regulations different than the state law), that would present a different case. So too if a state sought to regulate in an area exclusively committed to the federal government. In those such cases, conflict preemption may apply. It does not follow, however, that preemption applies simply because a complementary state law may, in some applications, be in tension with the current preferred level of federal enforcement. *See Kansas*, 589 U.S. at 212.

9

immigration. And even if some disagreement in priorities were to later arise in a particular case or context, that still would not create conflict in *all* of the Act's applications.

Nor does federal law require "direction and supervision by federal officials" in the implementation of *state* law. Op. 21 (citing 8 U.S.C. § 1357(g)). Iowa's cooperative agreement with Immigration and Customs Enforcement requires such direction when state officials implement *federal* law. But here, again, the Act can be implemented complementarily.

To the extent any conflict "could" or "might" arise in SF2340's enforcement, Op. 18–19, an injured alien should bring an as-applied challenge to that enforcement action. But the mere possibility of some conflict is not sufficient to render the Act facially unconstitutional.

## CONCLUSION

The Court should grant the petition for rehearing *en banc*.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
*/s/ Charles E.T. Roberts*
CHARLES E.T. ROBERTS
  *Attorneys*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1141*

November 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rules of Appellate Procedure 29 and 32(a)(7)(B) because it contains 2,593 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

Pursuant to Eighth Circuit Rule 28A(h)(2), I further certify that the brief has been scanned for viruses, and the brief is virus free.

*/s/ Charles E.T. Roberts*
Charles E.T. Roberts

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system.

*/s/ Charles E.T. Roberts*
Charles E.T. Roberts
