No. 24-2263

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

IOWA MIGRANT MOVEMENT FOR JUSTICE, *et al.*,

*Plaintiffs-Appellees,*

v.

BRENNA BIRD, in her official capacity as ATTORNEY GENERAL OF IOWA,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Southern District of Iowa
Case No. 4:24-cv-00161-SHL
Honorable Stephen H. Locher

**AMICI CURIAE BRIEF FOR STATES OF OKLAHOMA, FLORIDA, ALABAMA, ALASKA, ARKANSAS, GEORGIA, IDAHO, INDIANA, KANSAS, LOUISIANA, MISSISSIPPI, MISSOURI, MONTANA, NEBRASKA, OHIO, SOUTH CAROLINA, SOUTH DAKOTA, TENNESSEE, TEXAS, WEST VIRGINIA, AND WYOMING SUPPORTING DEFENDANT-APPELLANT BRENNA BIRD'S PETITION FOR REHEARING EN BANC**

GENTNER DRUMMOND
  *Attorney General of Oklahoma*
GARRY M. GASKINS, II
  *Solicitor General*
ZACH WEST
  *Director of Special Litigation*
CULLEN D. SWEENEY
  *Assistant Solicitor General*

STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-9321
Garry.Gaskins@oag.ok.gov
*Counsel for Amici States*

JAMES UTHMEIER
  *Attorney General of Florida*
JEFFREY PAUL DESOUSA
  *Acting Solicitor General*
NATHAN A. FORRESTER
  *Chief Deputy Solicitor General*
ROBERT S. SCHENCK
  *Deputy Solicitor General*

OFFICE OF THE ATTORNEY GENERAL
PL-01, The Capitol
Tallahassee, FL 32399-1050
Phone: (850) 414-3300
Jeffrey.DeSousa@myfloridalegal.com

(ADDITIONAL COUNSEL LISTED BELOW)

# ADDITIONAL COUNSEL

**Steve Marshall**
*Attorney General of Alabama*

**Stephen J. Cox**
*Attorney General of Alaska*

**Tim Griffin**
*Attorney General of Arkansas*

**Chris Carr**
*Attorney General of Georgia*

**Raúl Labrador**
*Attorney General of Idaho*

**Theodore E. Rokita**
*Attorney General of Indiana*

**Kris W. Kobach**
*Attorney General of Kansas*

**Liz Murrill**
*Attorney General of Louisiana*

**Lynn Fitch**
*Attorney General of Mississippi*

**Catherine L. Hanaway**
*Attorney General of Missouri*

**Austin Knudsen**
*Attorney General of Montana*

**Mike Hilgers**
*Attorney General of Nebraska*

**Dave Yost**
*Attorney General of Ohio*

**Alan Wilson**
*Attorney General of South Carolina*

**Marty Jackley**
*Attorney General of South Dakota*

**Jonathan Skrmetti**
*Attorney General of Tennessee*

**Ken Paxton**
*Attorney General of Texas*

**John B. McCuskey**
*Attorney General of West Virginia*

**Keith G. Kautz**
*Attorney General of Wyoming*

# TABLE OF CONTENTS

**STATEMENT OF INTERESTS** ...................................................................................1

SUMMARY OF ARGUMENT ............................................................................... 2

ARGUMENT ............................................................................................................ 3

    I.    The Plaintiffs Lack Standing, Depriving This Court of Jurisdiction. ................................................................................................ 3

    II.    The Panel's Misapplication of *Salerno* Threatens State Authority to Defend Duly Enacted Legislation. ............................................................... 6

    III.    The Panel's Preemption Analysis Disregards States' Historic Authority and Conflicts with Controlling Precedent. ................................ 8

**CONCLUSION** ....................................................................................................12

**CERTIFICATE OF COMPLIANCE** ...............................................................14

**CERTIFICATE OF DIGITAL SUBMISSION** ................................................14

**CERTIFICATE OF SERVICE** ..........................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. United States*,
　567 U.S. 387 (2012) ............................................................................. 3, 4, 9, 10

*Biden v. Nebraska*,
　600 U.S. 477 (2023) ............................................................................................ 5

*Chy Lung v. Freeman*,
　92 U.S. 275 (1875) .............................................................................................. 9

*Clapper v. Amnesty Int'l USA*,
　568 U.S. 398 (2013) ............................................................................................ 4

*De Canas v. Bica*,
　424 U.S. 351 (1976) .......................................................................................... 11

*FDA v. All. for Hippocratic Med.*,
　602 U.S. 367 (2024) ........................................................................................ 5, 6

*Kansas v. Garcia*,
　589 U.S. 191 (2020) ............................................................................... 3, 11, 12

*Mayor of City of New York v. Miln*,
　36 U.S. 102 (1837) .............................................................................................. 8

*Murthy v. Missouri*,
　603 U.S. 43 (2024) .............................................................................................. 6

*Spokeo, Inc. v. Robins*,
　578 U.S. 330 (2016) ............................................................................................ 4

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
　600 U.S. 181 (2023) ............................................................................................ 5

*United States v. Salerno*,
　481 U.S. 739 (1987) ................................................................................. 1, 2, 6, 7

*United States v. Texas*,
　No. 24-50149 (5th Cir. Aug. 29, 2025) ........................................................ 2, 12

*United States v. Veasley*,
　98 F.4th 906 (8th Cir. 2024) ............................................................................... 6

*Wyeth v. Levine*,
　555 U.S. 555 (2009) .......................................................................................... 10

*Zyla Life Scis v. Wells Pharma of Houston, LLC*,
   134 F.4th 326 (5th Cir. 2025) .................................................................................. 8, 10

**Statutes**

Iowa Code § 718C.2(1) (2024) ............................................................................... 4

# STATEMENT OF INTERESTS

The States of Oklahoma, Florida, Alabama, Alaska, Arkansas, Georgia, Idaho, Indiana, Kansas, Louisiana, Mississippi, Missouri, Montana, Nebraska, Ohio, South Carolina, South Dakota, Tennessee, Texas, West Virginia, and Wyoming submit this brief as *amici curiae* in support of Appellant's Petition for Rehearing En Banc.

*Amici* States have compelling interests in this case. Like Iowa, *amici* States have faced unprecedented challenges from illegal immigration and many have enacted (or are considering) laws to protect their citizens that resemble Iowa's law here. The panel's decision threatens to strip States of their constitutional authority to complement federal immigration law through traditional police powers—authority States have exercised since the Founding in any number of contexts.

The stakes extend beyond immigration. The panel's analysis under *United States v. Salerno*, 481 U.S. 739 (1987), and its preemption framework threaten state sovereignty across multiple domains. If mere overlap with federal criminal law plus federal enforcement discretion adds up to obstacle preemption, then countless state criminal statutes could be on the chopping block—felon-in-possession laws, controlled-substance prosecutions, identity-theft statutes, and more.

And similar litigation nationwide underscores the importance of this case. Particularly relevant here, the Fifth Circuit recently granted *en banc* review and vacated a panel decision enjoining a Texas law regulating in the same arena. *See United States v.*

*Texas*, No. 24-50149 (5th Cir. Aug. 29, 2025). This Court should follow suit. *En banc* review is necessary to preserve States' historic authority, prevent the panel's flawed analysis from undermining cooperative federalism, and resolve this important question affecting sovereign States across the nation.

## SUMMARY OF ARGUMENT

The panel's decision warrants *en banc* review for three reasons.

First, Plaintiffs lack Article III standing to challenge Iowa's law ("SF2340"), much less to facially invalidate state legislation. The individual Plaintiffs claim to fear prosecution despite holding legal immigration status, but SF2340 only criminalizes entry by persons illegally present under federal law. Their speculative fears about hypothetical enforcement mistakes cannot confer standing. The organizational plaintiff similarly fails to establish concrete injury.

Second, the panel misapplied *Salerno* by facially invalidating SF2340. Even one constitutional application defeats facial invalidation under *Salerno*. Here, Iowa identifies numerous constitutional applications: prosecutions where federal officials arrested the alien, where States receive federal approval, or where enforcement occurs under Section 287(g) agreements. The panel's failure to address these applications violates *Salerno* and threatens States' ability to defend their legislation.

Third, the panel's preemption analysis disregards States' historic authority and conflicts with controlling precedent. For the first century of the Republic, States

primarily regulated immigration, excluding categories of aliens they deemed undesirable. Although federal authority has expanded, States never surrendered their concurrent power to enforce criminal laws. Despite that history, the panel held that any overlap with federal law plus federal enforcement discretion creates obstacle preemption. Yet *every* federal crime involves enforcement discretion. That reasoning effectively converts all immigration matters into an occupied field, contravening the distinction between field and conflict preemption in *Arizona v. United States*, 567 U.S. 387 (2012).

If States cannot prosecute conduct that federal law also criminalizes, then felon-in-possession laws, controlled-substance prosecutions, fraud protections, and identity-theft statutes may also be preempted. This is not the law. Indeed, the Supreme Court has repeatedly affirmed that "[t]he mere fact that [a] state law[]… overlap[s] to some degree with federal criminal provisions does not even *begin* to make a case for conflict preemption." *Kansas v. Garcia*, 589 U.S. 191, 212 (2020) (emphasis added).

Like the Fifth Circuit, this Court should grant rehearing *en banc* to correct these errors and preserve the constitutional balance between state and federal authority.

## ARGUMENT

**I.　THE PLAINTIFFS LACK STANDING, DEPRIVING THIS COURT OF JURISDICTION.**

As a threshold matter, Plaintiffs lack Article III standing. Without standing, this Court lacks jurisdiction to reach the merits, much less to facially invalidate state legislation. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). This Court should not

reach the merits when Plaintiffs have failed to demonstrate a concrete, particularized injury fairly traceable to SF2340.

### A. Individual Plaintiffs' Alleged Injuries Are Speculative.

The individual Plaintiffs claim they face a credible threat of prosecution despite holding legal immigration status. But SF2340, by its express terms, only criminalizes entry or attempted entry into Iowa by persons who are in the United States illegally under federal law. Iowa Code § 718C.2(1) (2024). The panel erroneously credited Plaintiffs' unfounded fears that SF2340 applies to lawfully present individuals, finding their claims of potential prosecution "arguable" despite the statute's clear limitation to persons illegally present under federal law. Panel Op. at 7. That abandons the presumption that state legislatures act within constitutional bounds. *See Arizona*, 567 U.S. at 415.

Plaintiffs' fears are belied by SF2340's text and structure. The law incorporates federal immigration status as an element, meaning anyone with current lawful status cannot be prosecuted. To the extent Plaintiffs fear mistaken enforcement, such speculative concerns about hypothetical future government mistakes do not confer standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409-10 (2013) (alleged injury must be "certainly impending," not based on a "highly attenuated chain of possibilities").

Moreover, violations of federal immigration law cannot themselves serve as a basis to challenge SF2340's constitutionality. If a plaintiff is illegally present under federal law, he lacks a "legally protected interest" to vindicate, *Biden v. Nebraska*, 600 U.S. 477, 489 (2023), and thus cannot show injury from a state law that complements federal restrictions. Courts cannot recognize an injury arising from illegal conduct as grounds for standing, particularly where that injury stems from unchallenged federal immigration law itself.

### B. The Organizational Plaintiff Also Lacks Standing.

The Iowa Migrant Movement for Justice ("MMJ") lacks standing. Although organizations may assert their members' standing, they must still satisfy the usual requirements for injury, causation, and redressability. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 393-94 (2024). An organization has representational standing only if "its members would otherwise have standing to sue in their own right." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023). For the reasons above, MMJ has failed to identify any specific members who are likely to suffer a concrete injury.

MMJ also claims SF2340 frustrates its mission and forces resource diversion. But the Supreme Court has rejected such generalized organizational injury theories. *See Hippocratic Med.*, 602 U.S. at 390-96. MMJ has not shown that it altered or curtailed any particular activity due to SF2340, nor has it identified concrete costs or disruptions

5

attributable to the law. Absent such allegations, the alleged harm remains too speculative to support standing. *Id.*

### C. Standing Requirements Are Critical to Judicial Restraint and Federalism.

The Supreme Court has repeatedly emphasized the high bar for standing—especially in challenges to state legislation. *See Murthy v. Missouri*, 603 U.S. 43, 58 (2024). The standing requirement "implements 'the Framers' concept of the proper—and properly limited—role of the courts in a democratic society'" and "screen[s] out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action." *Hippocratic Med.*, 602 U.S. at 380-81.

These principles have particular force when federal courts are asked to enjoin state legislation. *Amici* States have a compelling interest in ensuring federal courts do not overstep their authority by finding standing where none exists.

## II. THE PANEL'S MISAPPLICATION OF *SALERNO* THREATENS STATE AUTHORITY TO DEFEND DULY ENACTED LEGISLATION.

Iowa correctly explains the panel's *Salerno* error in its petition. *Amici* States emphasize how this error threatens state sovereignty nationwide. Under *Salerno* and this Court's decision in *Veasley*, even one constitutional application defeats facial invalidation. *United States v. Veasley*, 98 F.4th 906, 909 (8th Cir. 2024); *Salerno*, 481 U.S. at 745. The panel never determined whether SF2340 has any constitutional

applications—instead analyzing only whether the statute "could" sometimes conflict with federal discretion. Panel Op. at 17-19.

As Iowa identifies in its petition, numerous scenarios exist where SF2340's application would be constitutional: (1) federal officials arrested the illegal alien; (2) none of the panel's identified exceptions apply; (3) the State receives federal approval before prosecuting; (4) enforcement occurs under a State's Section 287(g) agreement; and (5) federal officials order removal to the same country the State specifies. Where is the conflict in such cases?

The panel's failure to identify even one unconstitutional application before facially invalidating SF2340 violates *Salerno* and threatens States' authority to defend their legislation. Under the panel's approach, federal courts could strike down state laws based on hypothetical future conflicts without ever identifying an actual constitutional violation. This turns *Salerno* on its head and gives plaintiffs a roadmap to invalidate state laws through sheer speculation rather than a definitive showing.

The stakes extend far beyond immigration. If courts need not identify actual unconstitutional applications before facially invalidating state statutes, then the *Salerno* standard becomes meaningless. The States' ability to defend their democratically enacted laws is undermined, and facial challenges could become easy wins for plaintiffs based on conjecture. This threatens state sovereignty and federalism itself.

7

## III. THE PANEL'S PREEMPTION ANALYSIS DISREGARDS STATES' HISTORIC AUTHORITY AND CONFLICTS WITH CONTROLLING PRECEDENT.

### A. The Panel Improperly Held that Congress Has Preempted the Field in an Area of Historic State Police Powers.

The panel attempted to distinguish *Zyla Life Scis v. Wells Pharma of Houston, LLC*, 134 F.4th 326, 330 (5th Cir. 2025), by asserting that "[i]mmigration is not a traditional subject of state regulation." Panel Op. at 19. This is historically wrong and legally flawed.

As *amici* States detailed in their amicus brief to the panel, for the first century of the Republic, States extensively regulated alien entry and presence. Amici Curiae Br. of Oklahoma et al. at 10-18 (filed July 10, 2025). States enacted numerous laws restricting the immigration of certain classes of aliens, including convicted criminals, indigent persons, and those suspected of carrying infectious disease—authority the Supreme Court upheld as within states' "undeniable and unlimited jurisdiction" over persons within their borders. *Mayor of City of New York v. Miln*, 36 U.S. 102, 139 (1837). This authority extended beyond mere exclusion—States required bonds from ship masters for alien passengers who might become public charges, enforced quarantine laws, and regulated the movement of aliens from sister states. Oklahoma Amici Curiae Br. at 12-13 & nn.2-3 (collecting sources). Many of these laws regulated movement across state lines as well as from abroad, demonstrating States' broad police power to protect their

8

citizens. *See id.* The Supreme Court never held that States surrendered these police powers over aliens throughout the nation's first century.

This state authority persisted even as federal immigration power expanded. In *Chy Lung v. Freeman*, 92 U.S. 275 (1875), while striking down a coastal state's law directly regulating entry of aliens *into the country*, the Court expressly left open whether States retained authority to enforce "necessary and proper laws against paupers and convicted criminals from abroad." *Id.* at 280. Critically, States have always retained authority to enforce generally applicable criminal laws against all persons within their borders, including illegal aliens, outside of that unique area. The Supreme Court has never suggested that federal immigration authority strips States of power to prosecute aliens for violations of state criminal law.

Instead, the Supreme Court has consistently recognized that States retain their concurrent power to enforce criminal laws against aliens who violate state law. In *Arizona*, the Court recognized that where a State is not operating in an occupied field, "a State may make violation of federal law a crime in some instances." 567 U.S. at 402. SF2340 follows this historical tradition by criminalizing conduct that threatens state welfare and public safety—just as States historically excluded those likely to become public charges or endanger their communities.

The panel's approach, by contrast, creates field preemption through the back door of obstacle preemption. In holding that any state law overlapping with federal

9

immigration law is obstacle preempted because "immigration is not a traditional subject of state regulation," Panel Op. at 14, the panel converts all immigration-related matters into an occupied field. That was wrong. As demonstrated above, criminal law enforcement is a traditional state function, and the presumption against preemption turns on the nature of the state regulation, not the duration of federal involvement in the field. *Wyeth v. Levine*, 555 U.S. 555, 565 n.3 (2009). It also contravenes *Arizona*'s careful distinction between field preemption (limited to alien registration) and conflict preemption (requiring an actual conflict).

The panel also ignored that SF2340 is not a general immigration regulation—it is a criminal law narrowly targeting specific conduct already criminalized by federal law. Criminal law enforcement is unquestionably within States' historic police powers. The presumption against preemption has "greatest force" when federal law potentially displaces state criminal law. Federal law does not strip States of their traditional authority to criminalize conduct related to immigration.

### B. The Panel's Analysis Threatens Numerous State Laws.

The panel's reasoning has "staggering" implications for state sovereignty. *Zyla*, 134 F.4th at 335. If overlap with federal law plus federal enforcement discretion creates obstacle preemption, then "many state statutes [that] incorporate federal criminal requirements" are at risk. *Id.* at 334-35.

Consider the practical impact on *amici* States if such logic proliferates:

• Felon-in-possession laws: Under the panel's reasoning, state prosecutions infringe federal prosecutorial discretion.

• Fraud laws: The panel's logic would preempt state fraud protections that overlap with federal wire-fraud or mail-fraud statutes.

• Identity-theft laws: Overlapping state and federal prohibitions would face preemption challenges.

• Human-trafficking laws: State efforts to combat trafficking could be deemed obstacles to federal discretion.

The panel attempted to distinguish these scenarios by noting SF2340 applies only to aliens. Panel Op. at 19. But many criminal laws have specific applications—felon-in-possession laws apply only to convicted felons; underage-drinking laws apply only to minors. A law is not preempted merely because it targets specific persons. And States indisputably (until now) can apply their criminal laws to aliens, as they have in cases of murder, rape, burglary, and countless other crimes. That Iowa's law applies to illegal aliens can be significant only if there is sufficient textual evidence in the INA to overcome the presumption against preemption with its greatest force. *See Garcia*, 589 U.S. at 208. When the Supreme Court ran that analysis—to a version of the INA that regulated illegal aliens in virtually identical respects—it found no field preemption: illegal aliens are not "plainly within" the "central aim of federal regulation." *De Canas v. Bica*, 424 U.S. 351, 359 (1976).

11

Consider too this case's impact on litigation nationwide. Again, the Fifth Circuit recently deemed the matter significant enough to grant *en banc* review. *Texas*, No. 24-50149. Moreover, the United States has since withdrawn lawsuits against other States challenging similar laws, and it has filed multiple amicus briefs supporting States like Iowa and explaining that such laws are neither field nor conflict preempted. The federal government has also entered Section 287(g) agreements with Iowa, Oklahoma, Florida, and other States, expressly authorizing state enforcement of federal immigration law.

These developments underscore that complementary state enforcement creates no obstacle to federal authority—federal officials welcome such cooperation. The panel's contrary holding threatens this cooperative framework and the countless state criminal laws that incorporate federal requirements across all domains.

*Garcia* was clear: "[T]here are now many instances in which a prosecution for a particular course of conduct could be brought by either federal or State prosecutors." 589 U.S. 191, 212 (2020). The "mere fact that [a] state law[] overlap[s]" with federal law "does not even begin to make a case for conflict preemption." *Id.* at 211. The panel's contrary holding requires *en banc* correction.

## CONCLUSION

The panel decision threatens state sovereignty and federalism. It warrants *en banc* review.

12

Appellate Case: 24-2263     Page: 17     Date Filed: 12/03/2025 Entry ID: 5584037

Respectfully Submitted,

| | |
|---|---|
| *s/ James Uthmeier* | *s/ Garry M. Gaskins, II* |
| JAMES UTHMEIER | GENTNER DRUMMOND |
| *Attorney General of Florida* | *Attorney General of Oklahoma* |
| JEFFREY PAUL DESOUSA | GARRY M. GASKINS, II |
| *Acting Solicitor General* | *Solicitor General* |
| NATHAN A. FORRESTER | ZACH WEST |
| *Chief Deputy Solicitor General* | *Director of Special Litigation* |
| ROBERT S. SCHENCK | CULLEN D. SWEENEY |
| *Deputy Solicitor General* | *Assistant Solicitor General* |
| OFFICE OF ATTORNEY GENERAL | OFFICE OF ATTORNEY GENERAL |
| PL-01, The Capitol | STATE OF OKLAHOMA |
| Tallahassee, FL 32399-1050 | 313 N.E. 21st Street |
| (850) 414-3300 | Oklahoma City, OK 73105 |
| Jeffrey.DeSousa@myfloridalegal.com | Phone: (405) 521-9321 |
| Nathan.Forrester@myfloridalegal.com | Garry.Gaskins@oag.ok.gov |
| Robert.Schenck@myfloridalegal.com | Zach.West@oag.ok.gov |
| | Cullen.Sweeney@oag.ok.gov |
| *Counsel for Amici States* | *Counsel for Amici States* |

## CERTIFICATE OF COMPLIANCE

This response complies with the typeface requirements of Fed. R. App. P. 32 because it was prepared in a proportionally spaced font (Garamond, 14-point) using Microsoft Word for Microsoft 365. The document complies with the type-volume limitation of Fed. R. App. P. 29, because it contains 2,600 words, excluding the parts exempted.

s/ *Garry M. Gaskins, II*
GARRY M. GASKINS, II

## CERTIFICATE OF DIGITAL SUBMISSION

All required privacy redactions have been made as required by 8th Cir. R. 25A and the ECF Manual. Additionally, this filing was scanned with Crowdstrike antivirus updated on November 15, 2025.

s/ *Garry M. Gaskins, II*
GARRY M. GASKINS, II

## CERTIFICATE OF SERVICE

I certify that on December 1, 2025, I caused the foregoing to be filed with this Court and served on all parties via the Court's CM/ECF filing system. No paper copies are required pursuant to 8th Cir. R. 25A.

s/ *Garry M. Gaskins, II*
GARRY M. GASKINS, II