No. 24-2263

_____

# In the United States Court of Appeals for the Eighth Circuit

_____

IOWA MIGRANT MOVEMENT FOR JUSTICE, *et al.*,
*Plaintiffs – Appellees*,

v.

BRENNA BIRD, in her official capacity as Attorney General of Iowa,
*Defendant – Appellant*,

KIMBERLY GRAHAM, in her official capacity as Polk County Attorney, and
ZACH HERRMANN, in his official capacity as Clayton County Attorney,
*Defendants*.

_____

On Appeal from the United States District Court for the Southern District of Iowa
Case No. 4:24-cv-00161-SHL-SBJ, Honorable Stephen H. Locher, District Judge

_____

## PLAINTIFFS – APPELLEES' OPPOSITION TO PETITION FOR REHEARING EN BANC

_____

Rita Bettis Austen
Shefali Aurora
Thomas Story
ACLU of Iowa Foundation Inc.
505 Fifth Avenue, Ste. 808
Des Moines, IA 50309-2317
Phone: (515) 243-3988
Fax: (515) 243-8506
rita.bettis@aclu-ia.org
shefali.aurora@aclu-ia.org
thomas.story@aclu-ia.org

Emma Winger
Suchita Mathur
Michelle Lapointe
American Immigration Council
2001 L Street NW, Suite 500
Washington, DC 20036
Phone: (202) 507-7512
ewinger@immcouncil.org
smathur@immcouncil.org
mlapointe@immcouncil.org

*Counsel for Plaintiffs – Appellees*
(Additional counsel listed on signature block)

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..........................................................................................iii

INTRODUCTION .................................................................................................... 1

ARGUMENT ........................................................................................................... 3

I.   THE PANEL CORRECTLY CONCLUDED THAT SF 2340 IS FACIALLY
     PREEMPTED, AS COMPELLED BY *ARIZONA* AND CONSISTENT WITH
     OTHER COURTS TO CONSIDER SIMILAR STATUTES. ............................ 3

II.  THE PANEL CORRECTLY FOLLOWED THE DIRECTION OF THE
     SUPREME COURT BY REMANDING QUESTIONS REGARDING THE
     SCOPE OF THE INJUNCTION. .................................................................... 15

CONCLUSION ...................................................................................................... 16

CERTIFICATE OF COMPLIANCE ....................................................................... 19

CERTIFICATE OF SERVICE ................................................................................ 20

Appellate Case: 24-2263    Page: 2    Date Filed: 12/17/2025 Entry ID: 5589403

**TABLE OF AUTHORITIES**

**CASES**

*Arizona v. United States*, 567 U.S. 387 (2012) .................................................*passim*

*Chy Lung v. Freeman*, 92 U.S. 275 (1875).................................................................. 12

*Crosby v. National Foreign Trade Council* 530 U.S. 363 (2000) ...................... 9, 13

*Deep S. Ctr. for Envtl. Justice v. EPA*, 138 F.4th 310 (5th Cir. 2025)........................ 1

*Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022)................................ 15

*English v. Gen. Elec. Co.*, 496 U.S. 72 (1990)...................................................... 6, 14

*Fla. Immigrant Coal. v. Att'y Gen.*,
   No. 25-11469, 2025 WL 1625385 (11th Cir. June 6, 2025).......................1, 12, 14

*Galvan v. Press*, 347 U.S. 522 (1954) ........................................................................ 12

*Hines v. Davidowitz*, 312 U.S. 52 (1941) ............................................................ 12, 14

*Idaho Org. of Res. Councils v. Labrador*,
   780 F. Supp. 3d 1013 (D. Idaho 2025) .............................................................. 1, 15

*Kansas v. Garcia*, 589 U.S. 191 (2020)..................................................................... 10

*Lozano v. City of Hazleton*, 724 F.3d 297 (3d Cir. 2013) ........................................ 13

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996)............................................................. 6

*Moody v. NetChoice, LLC*, 603 U.S. 707 (2024) ......................................................... 4

*New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
   514 U.S. 645 (1995) ............................................................................................... 6

*Padres Unidos de Tulsa v. Drummond*,
   783 F. Supp. 3d 1324 (W.D. Okla. 2025)...................................................1, 12, 15

*Plyler v. Doe*, 457 U.S. 202 (1982) ........................................................................... 13

*Reps. Comm. for Freedom of the Press v. Rokita*, 147 F.4th 720 (7th Cir. 2025) ... 16

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947)............................................. 14

*Takahashi v. Fish & Game Comm'n*, 334 U.S. 410 (1948)...................................... 12

Appellate Case: 24-2263      Page: 3      Date Filed: 12/17/2025 Entry ID: 5589403

*Truax v. Raich*, 239 U.S. 33 (1915) .......................................................... 12

*Trump v. CASA*, 606 U.S. 831 (2025) ........................................................ 15

*United States v. Lierman*, 151 F.4th 530 (4th Cir. 2025) .......................... 16

*United States v. Locke*, 529 U.S. 89 (2000) .............................................. 13

*United States v. Nixon*, 418 U.S. 683 (1974) ............................................. 5

*United States v. Salerno*, 481 U.S. 739 (1987) .......................................... 4

*United States v. Texas*, 144 F.4th 632 (5th Cir. 2025) ....................... 1, 4, 11

*United States v. Texas*, 599 U.S. 670 (2023) ......................................... 5, 10

*United States v. Veasley*, 98 F.4th 906 (8th Cir. 2024) ............................... 4

*Uthmeier v.  Immigrant Coal.*, 145 S. Ct. 2872 (Mem) (U.S. 2025) ................. 2, 15

*Whole Woman's Health v. Hellerstedt*, 579 U.S. 582 (2016) ................... 15

*Wyeth v. Levine*, 555 U.S. 555 (2009) ....................................................... 9

*Zyla Life Scis., L.L.C. v. Wells Pharma of Houston, L.L.C.*,

134 F.4th 326 (5th Cir. 2025) ............................................................... 9

**STATUTES**

8 U.S.C. § 1326 ........................................................................................ 4, 5

8 U.S.C. § 1357(g) ....................................................................................... 4

8 U.S.C. § 1357(g)(1) ................................................................................. 7

8 U.S.C. § 1357(g)(2) ................................................................................. 7

8 U.S.C. § 1357(g)(3) ................................................................................. 7

8 U.S.C. § 1357(g)(5) ................................................................................. 7

Ariz. Rev. Stat. Ann. § 13-3883(A)(5) ...................................................... 11

**RULES**

Fed. R. App. P. 40(b)(2) .............................................................................. 2

Appellate Case: 24-2263     Page: 4     Date Filed: 12/17/2025 Entry ID: 5589403

## INTRODUCTION

Consistent with 150 years of Supreme Court precedent establishing the federal government's broad and undoubted power in regulating entry and removal, a unanimous panel of this Court has twice held that Senate File 2340 (SF 2340), Iowa's illegal reentry statute, is facially preempted because it creates a state-run "parallel scheme of enforcement for immigration law" that conflicts with Congress's carefully calibrated federal immigration scheme. Op. 18.

The panel is not alone. Every court to consider a similar statute has concluded that it is likely preempted on its face. *Fla. Immigrant Coal. v. Att'y Gen.*, No. 25-11469, 2025 WL 1625385, at *3 (11th Cir. June 6, 2025); *Padres Unidos de Tulsa v. Drummond*, 783 F. Supp. 3d 1324, 1346-47 (W.D. Okla. 2025); *Idaho Org. of Res. Councils v. Labrador*, 780 F. Supp. 3d 1013, 1040-43 (D. Idaho 2025).[1] Recently, the Supreme Court declined to stay a preliminary injunction blocking Florida's illegal entry and reentry statute—in a case where Iowa and the United States appeared as Amici, raising many of the arguments they make before

---

[1] A Fifth Circuit panel likewise found a similar Texas law both field and conflict preempted. *United States v. Texas*, 144 F.4th 632, 667-687 (5th Cir.), *reh'g en banc granted, opinion vacated*, 150 F.4th 656 (Mem) (5th Cir. 2025). The Fifth Circuit subsequently agreed to rehear that case en banc in response to a petition in which Texas' lead argument was that the panel's organizational standing ruling conflicted with *Alliance for Hippocratic Medicine* and with another Fifth Circuit decision, *Deep S. Ctr. for Envtl. Justice v. EPA*, 138 F.4th 310, 319 (5th Cir. 2025). *See* Petition for Rehearing, *United States v. Texas*, Case No. 24-50149 (5th Cir. July 31, 2025).

1

this Court—with no noted dissents. *Uthmeier v. Fla. Immigrant Coal.*, 145 S. Ct. 2872 (Mem) (U.S. 2025).

Ignoring this overwhelming weight of authority, Defendant resorts to mischaracterizing the panel's decision. Contrary to Defendant's claim, the panel carefully and thoroughly explained why each section of SF 2340 is preempted in "every application." Op. 13, 15, 27. Far from a mere overlap of state and federal statutes, the panel held that SF 2340 is facially preempted because in every application it authorizes Iowa to unilaterally enforce federal immigration law— precisely what the Supreme Court held was prohibited in *Arizona v. United States*, 567 U.S. 387 (2012). It does not matter that Iowa considers itself aligned with the current administration or that, in some cases, federal officials may approve of prosecutions under Iowa's reentry law. As the panel correctly held, it is *Congress* that determines the scope of preemption, not the policy choices of the Executive Branch.

Because the unanimous panel decision is correct, consistent with all other courts to consider this issue, and compelled by binding Supreme Court precedent, rehearing en banc is not warranted. *See* Fed. R. App. P. 40(b)(2).

2

**ARGUMENT**

## I. THE PANEL CORRECTLY CONCLUDED THAT SF 2340 IS FACIALLY PREEMPTED, AS COMPELLED BY *ARIZONA* AND CONSISTENT WITH OTHER COURTS TO CONSIDER SIMILAR STATUTES.

The panel correctly concluded that SF 2340 is conflict preempted on its face—even accepting Defendant's atextual interpretation of the statute—because it grants state officers discretion regarding immigration enforcement that Congress reserved for federal officials and "creates a parallel scheme of enforcement of immigration law" that would permit Iowa "to achieve its own immigration policy." Op. 18 (quoting *Arizona*, 567 U.S. at 408). Notably, Defendant does not offer any meaningful attack on the panel's conclusions that Section 4 (requiring state court judges to order noncitizens "to return to the foreign nation from which the person entered") and Section 6 (prohibiting abatement of state illegal reentry prosecutions "on the basis that a federal determination regarding the immigration status of the person is pending or will be initiated") of the statute are both facially preempted.[2] Op. 22-26. Instead, in pursuit of rehearing, Defendant raises two main criticisms of the panel opinion, which she repeats in different iterations throughout the petition. First, selectively quoting from the panel decision, Defendant asserts that the panel

---

[2] Defendant similarly does not seek rehearing with respect to the panel's standing analysis. To the extent that Amici States argue that this analysis warrants rehearing, Amici States Br. 3-6, the panel's lengthy, thorough, and correct analysis speaks for itself. Op. 4-11.

3

"never assessed" whether Section 2 of SF 2340 is preempted in every application. Pet. 2. Defendant suggests this is fatal because there may be circumstances where federal officials approve of enforcement under the statute and because some Iowa officials are now permitted to enforce *federal* immigration law pursuant to an agreement under 8 U.S.C. § 1357 (g). Pet. 9, 12, 18-19. Second, Defendant suggests that the panel impermissibly found preemption based on the "mere overlap" of SF 2340 and 8 U.S.C. § 1326. Pet. 2, 10-12. Neither argument withstands scrutiny.

First, contrary to Defendant's assertions, Pet. 2, the panel clearly applied the "no set of circumstances" analysis from *Salerno* and *Veasley* when it correctly held that "every application of [SF 2340] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Op. 27; *see also id.* at 13 (holding that to prevail, Plaintiffs must show "no set of circumstances exist under which the law would be valid") (quoting *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024)), 15 (same); *accord United States v. Salerno*, 481 U.S. 739, 745 (1987); *United States v. Veasley*, 98 F.4th 906, 909 (8th Cir. 2024).[3] In arguing

---

[3] While several courts have questioned whether the "no set of circumstances" test is appropriate when considering a facial preemption challenge, *see, e.g. Texas*, 144 F.4th at 663 & n.232 (collecting cases), the Court need not resolve this question because the panel correctly found that SF 2340 is preempted in every application.

4

otherwise, Defendant ignores the scope of Congress's complex federal immigration enforcement regime. Congress provided *federal* officials with a range of tools—prosecutions, various kinds of removal proceedings, numerous forms of relief and prosecutorial discretion—so that federal officials could make enforcement decisions in a way that serves federal immigration priorities, domestic law enforcement, humanitarian concerns, and relations with other countries. *See Arizona*, 567 U.S. at 395-96; Op. 15; *see also* Plaintiffs-Appellees' Initial Br. 4-8 (detailing complex scheme). Accordingly, "Congress gives discretion to federal officials in enforcing federal immigration law, with limited opportunities for the involvement of states" under the direction and control of federal officers. Op. 21-22 (citing 8 U.S.C. § 1357); *Arizona*, 567 U.S. at 408-09 (listing specific provisions granting narrow role for states).

Thus Defendant's suggestion that federal officials must prosecute all violations of 8 U.S.C. § 1326 such that no federal discretion is involved, Pet. 11, 17, is not only patently untrue*, see, e.g. United States v. Texas*, 599 U.S. 670, 678 (2023) (recognizing the Executive's "exclusive authority and absolute discretion" whether to prosecute a case (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)))—it also misses the point. SF 2340's state immigration enforcement regime conflicts with the many tools for regulating entry and removal, not just §

5

1326, that Congress has entrusted solely to the discretion of the federal government.

As a result, that federal officials may now bless some prosecutions under SF 2340 does not cure those prosecutions of the conflict with *Congress's* immigration scheme. As the panel found, in every application SF 2340 "empowers Iowa to contradict the policy decisions of *Congress*," Op. 20 (emphasis added), and exceeds the "limited opportunities" *Congress* has provided "for the involvement of states" in immigration enforcement, *id.* 21-22, *Arizona*, 567 U.S. at 408. In every case, contrary to Congress's intent, SF 2340 removes federal discretion and control. This remains true even if in some instances Iowa elects to receive "input and approval" from Executive Branch officers while pursuing its own state prosecution (to be followed by a sentence from a state judge and a state order to return to a foreign country). Pet. 9. "[T]he purpose of *Congress* is the ultimate touchstone in every pre-emption case." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (cleaned up, emphasis added); *English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79 (1990) ("Pre-emption fundamentally is a question of congressional intent . . . ."); *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995) ("[P]re-emption claims turn on Congress's intent."). The Executive Branch cannot save SF 2340 by endorsing a state-led immigration enforcement regime that Congress has prohibited. Op. 21-22.

6

Nor does the Iowa Department of Public Safety's (DPS) new 287(g) agreement rescue SF 2340 from facial invalidity, Pet. 18-19—an argument the panel carefully considered and rejected, Op. 20-21. As the panel explained, "although some Iowa law enforcement officers may [now] enforce federal law in certain circumstances, enforcing the *state* law still conflicts with federal immigration law." *Id*. (emphasis in original). The agreement simply authorizes certain employees of a single state agency to perform specified immigration "function[s]" subject to DHS's "direction and supervision." 8 U.S.C. § 1357 (g) (3), (g)(5); *see id.* § 1357(g)(2) (authorization only extends to individual "officer[s] or employee[s]" who undergo the requisite training and certification). Nothing in the agreement permits Iowa to enact and enforce its own immigration laws. Op. 21. To the contrary, such agreements affirm federal supremacy by outlining the limited situations in which states can help enforce federal immigration law as authorized by federal authorities. *See Arizona*, 567 U.S. at 408-09 (relying on 8 U.S.C. § 1357(g)(1) to conclude that Congress did not allow a "State to achieve its own immigration policy"). In other words, by explicitly permitting limited forms of assistance in enforcing federal law, Congress precluded states from enacting their own independent immigration schemes like SF 2340, which allows Iowa to arrest, prosecute, sentence and remove noncitizens for violating *state* immigration law *without* federal direction and supervision. *See id.*

7

As the panel recognized, the Supreme Court's decision in *Arizona* compels the conclusion that SF 2340 is facially conflict preempted. *See* Op. 13, 18. In fact, many portions of the panel decision that Defendant takes issue with come directly from the Supreme Court's analysis of Section 6 of Arizona's SB 1070, which the Court found conflict preempted on its face. SF 2340 is preempted for the same reasons as Section 6, which authorized state officers to arrest noncitizens based on probable cause of removability. *Arizona*, 567 U.S. at 408-10. Under SF 2340, as with Section 6, "state authority could be exercised without any input from the Federal Government," and therefore "would allow the State to achieve its own immigration policy" and could lead to "unnecessary harassment" of noncitizens "who federal officials determine should not be removed." *Id.* at 408; *see id.* at 413 ("[I]t would disrupt the federal framework to put state officers in the position of holding [noncitizens] in custody for possible unlawful presence without federal direction and supervision."). It did not matter that in some circumstances federal officials might approve of a particular arrest under Section 6. The problem with the provision, just like SF 2340, is that the statute impermissibly authorized the unilateral enforcement of federal immigration law; as the Court held, "[t]his is not the system Congress created." *Id.* at 408.

Next, Defendant argues that the "mere fact" of overlap with federal law is not sufficient for preemption. Pet. 13-16. That may be true in many other

circumstances, "[b]ut not here." Op. 19. Congress's choice to accommodate various federal interests by creating tools that enable broad federal discretion sets this case apart from the mine-run of parallel crimes. As in *Crosby v. National Foreign Trade Council*, here "Congress clearly intended the federal Act to provide the [Executive] with flexible and effective authority . . ." 530 U.S. 363, 374 (2000). And, just as in that case, Iowa's "unyielding application" of criminal sanctions whenever it sees fit "undermines the [Executive's] intended statutory authority by making it impossible" for the federal executive to chart the course they think best in particular circumstances. *Id.* at 377. Moreover, as the panel observed, like the foreign policy regulation at issue in *Crosby*, "[i]mmigration is not a traditional subject of state regulation." Op. 19 (contrasting *Zyla Life Scis., L.L.C. v. Wells Pharma of Houston, L.L.C.*, 134 F.4th 326, 330 (5th Cir. 2025) as addressing the state's "traditional prerogative to police drug safety").[4]

---

[4] Despite Defendant's heavy reliance on *Zyla*, Pet. 14-16, the Fifth Circuit's decision in that case is entirely inapplicable. Finding the Supreme Court's decision in *Wyeth v. Levine* to be controlling, *Zyla* held that state laws criminalizing the sale of new drugs not approved by the Food and Drug Administration did not impermissibly conflict with the Federal Food, Drug, and Cosmetic Act (FDCA) because that statute "itself permits States to regulate . . . concurrently with the Federal Government." 134 F.4th at 336; *see Wyeth v. Levine*, 555 U.S. 555, 575 (2009) (holding that the FDCA did not preempt a state tort lawsuit, where Congress legislated with "certain awareness of the prevalence of state tort litigation" and declined to expressly preempt such actions).

9

For similar reasons, *Kansas v. Garcia*, 589 U.S. 191 (2020), is inapposite. There, Kansas prosecuted noncitizens under a generally applicable state identity theft statute for using fraudulent social security numbers on tax withholding forms. 589 U.S. at 195, 198-99. The noncitizens based their preemption theory on the fact that the tax withholding process at the beginning of a job is typically conducted alongside employment verification, which is related to the immigration system. *Id.* at 197, 208-09. In contrast to that glancing relevance to immigration employment rules, SF 2430 does not merely "overlap to some degree" with federal law. *Id.* at 211. Unlike the generally applicable fraud statute, Section 2 "is not a generally applicable [criminal] law." Op. 19. Instead, it asserts state control in derogation of the comprehensive federal system in which Congress "made a considered decision" to balance various interests by placing discretion in federal officials' hands. *Garcia*, 589 U.S. at 211; *see* Op. 19. And as discussed, enforcing the law does more than merely upset criminal law enforcement priorities; "the Executive's enforcement discretion in immigration law 'implicates not only normal domestic law enforcement priorities but also foreign policy objectives.'" Op. 19-20. (quoting *Texas*, 599 U.S. at 679) (cleaned up).

Again, conflict preemption here follows directly from *Arizona*. At its most fundamental level, that case held that a state may not enact a law that permits it to "'achieve its own immigration policy,' ignoring the discretionary decisions of

10

federal officials." Op. 19 (quoting *Arizona*, 567 U.S. at 408). *Arizona*'s throughline is that federal law does not allow "unilateral state action" in immigration enforcement. *Arizona*, 567 U.S. at 410. Section 6—authorizing state immigration arrests—was conflict preempted because it allowed "unilateral state action" that usurped the federal government's ability to exercise discretion. *Id.* at 407–10. Section 3, by claiming the "independent authority to prosecute" registration violations, would similarly "diminish[] the Federal Government's control over enforcement" and "frustrate federal policies." *Id.* at 401–02 (cleaned up).

Defendant's effort to distinguish *Arizona* fails. The Supreme Court did not hold Section 6 preempted because it "criminalized" removability, Pet. 17—Section 6 was not a criminal offense; it simply authorized the state to arrest people for violating federal immigration standards. *See* Ariz. Rev. Stat. Ann. § 13-3883(A)(5). Nor did the Court in any way limit immigration-related field preemption to noncitizen registration. If states cannot enact a statute that permits unilateral arrests under these circumstances, *a fortiori* they cannot authorize the unilateral arrest, prosecution, imprisonment, and removal of people for violating federal standards. *See Arizona*, 567 U.S. at 408-10. Given *Arizona*'s holding and logic, it is unsurprising that other courts have found comparable state laws preempted after engaging in similar analyses. *See Texas*, 144 F.4th at 677-688 (holding conflict preempted Texas law with nearly identical provisions criminalizing illegal reentry,

11

requiring removal, and prohibiting abatement); *Fla. Immigrant Coal.*, 2025 WL 1423357, at *10–11 (same for similar Florida law); *Padres Unidos de Tulsa*, 785 F. Supp. 3d at 1006-1007 (same for similar Oklahoma law).

While Defendant and Amici States reprise prior arguments that immigration regulation is included in the states traditional police powers, Pet. 14, Amici States Br. 8-10, 150 years of Supreme Court precedent says otherwise. *See, e.g.*, *Chy Lung v. Freeman*, 92 U.S. 275, 280 (1875) ("The passage of laws which concern the admission of citizens and subjects of foreign nations to our shores belongs to Congress, and not to the States."); *Truax v. Raich*, 239 U.S. 33, 42 (1915) ("The authority to control immigration—to admit or exclude aliens—is vested solely in the Federal government."); *Hines v. Davidowitz*, 312 U.S. 52, 62 & n.10 (1941) (noting the "continuous recognition by this Court" of "the supremacy of the national power . . . over immigration . . . and deportation"); *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 419 (1948) ("[T]he states are granted no such powers."); *Arizona*, 567 U.S. at 409 ("Policies pertaining to the entry of aliens and their right to remain here are entrusted exclusively to Congress") (quoting *Galvan v. Press*, 347 U.S. 522, 531 (1954)) (cleaned up).[5]

---

[5] To the extent the United States suggests that *Plyler v. Doe* should be read to authorize state legislation regulating the entry and removal of noncitizens (like SF 2340), U.S. Br. 8, that position is plainly belied by the Supreme Court's explicit acknowledgment (within the same footnote) that "the State has no direct interest in

12

Nor do state laws from "the early days of the nation," Op. 14, save SF 2340 from preemption today. Whether the state statutes Amici cite would be subject to *dormant* constitutional preemption in the era prior to Congress's comprehensive scheme is now largely academic. Unsurprisingly, all the statutes cited by Amici pre-date the unbroken line of Supreme Court decisions establishing that the power to control immigration—the entry, admission, and removal of noncitizens—is *exclusively* a federal power. And they all predate Congress's enactment of a comprehensive and carefully balanced federal scheme to regulate entry and removal. *See Arizona*, 567 U.S. at 395 ("Federal governance of immigration and alien status is extensive and complex"). Whatever states attempted to do before Congress made federal dominance clear, 150 years of exclusive federal immigration power is more than sufficient to make the presumption against preemption inapplicable. *See United States v. Locke*, 529 U.S. 89, 108 (2000) ("[A]n 'assumption' of nonpre-emption is not triggered when the State regulates in an area where there has been a history of significant federal presence."); *Lozano v. City of Hazleton*, 724 F.3d 297, 314 n.23 (3d Cir. 2013) (rejecting presumption).

Defendant says the panel implicitly found field preemption, Pet. 15; to the extent that it did, it was plainly correct. *See Crosby*, 530 U.S. at 372 n.6 (quoting

controlling entry into this country, that interest being one reserved by the Constitution to the Federal Government." *Plyler v. Doe*, 457 U.S. 202, 229 n.23 (1982).

13

*English,* 496 U.S. at 79 n.5) ("[T]he categories of preemption are not 'rigidly distinct.'"). SF 2340 is field preempted because the federal interest in regulating entry and removal is "so dominant that the federal system . . . preclude[s] enforcement of state laws" and immigration regulation in this field is 'so pervasive . . . that Congress left no room for the States to supplement it.'" *Arizona*, 567 U.S. at 399 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947))

Everything the Supreme Court said about noncitizen registration in *Arizona* applies with even greater force here. The federal regime governing entry and removal is even more "pervasive" than the registration scheme. *Id.* Rules about entry across the international border and removal to foreign countries touch on "foreign relations" at least as much if not significantly more than registration documents. *Id.* at 400 (quoting *Hines*, 312 U.S. at 66–67). As with registration, if a state entry law "were valid, every State could give itself independent authority to prosecute federal [entry] violations, diminishing the Federal Government's control over enforcement" and allowing prosecution "even in circumstances where federal officials in charge of the comprehensive scheme determine that prosecution would frustrate federal policies." *Id.* at 402 (cleaned up).

As a result, every court to consider a similar statute has found that such statutes impermissibly intrude on the exclusively federal field of entry and removal. *See, e.g., Fla. Immigrant Coal.*, 2025 WL 1625385, at *3, *stay denied*,

14

145 S. Ct. 2872 (Mem); *Padres Unidos de Tulsa*, 783 F. Supp. 3d at 1346; *Idaho Org. of Res. Councils*, 780 F. Supp. 3d at 1043. And because SF2340 operates in an exclusively federal field, it is necessarily unconstitutional in every application. *Arizona*, 567 U.S. at 401 ("Field preemption reflects a congressional decision to foreclose *any* state regulation in the area, even if it is parallel to federal standards.") (emphasis added).

Finally, because there are no "constitutional applications" of SF 2340, severance is not appropriate. Pet. 20; *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582, 625 (2016), *abrogated on other ground by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022) (holding that severability clauses do not "require[] [courts] to proceed application by conceivable application when confronted with a facially unconstitutional statutory provision").

## II. THE PANEL CORRECTLY FOLLOWED THE DIRECTION OF THE SUPREME COURT BY REMANDING QUESTIONS REGARDING THE SCOPE OF THE INJUNCTION.

Defendant criticizes the panel for shirking "its duty" to address the proper scope of the injunction following *Trump v. CASA*, 606 U.S. 831 (2025), by remanding such questions to the district court. Pet. 20-21. But this is precisely what the Supreme Court itself did in *CASA*, declining to decide in the first instance the permissible scope of the injunction and instead remanding to the lower courts to decide in the first instance. *CASA*, 606 U.S. at 854. The panel correctly

15

concluded that this approach was particularly appropriate because the district court had previously had no cause to consider what relief might adequately protect Plaintiffs' interests while the United States remained a party to the litigation. Op. 30-32.

The panel recognized that there are a number of open factual questions regarding the scope of the injunction. *Id.* For example, the district court must determine whether a narrower injunction could adequately protect the thousands of members of Plaintiff Iowa Migrant Movement for Justice (MMJ), who live across Iowa, from arrest and detention, as well as prosecution under SF 2340. The district court must also consider the significant burden limiting any injunction to MMJ's members would place on MMJ. Certainly nothing about the panel's decision to permit the district court to resolve these questions calls for rehearing by the en banc Court. *See, e.g.*, *Reps. Comm. for Freedom of the Press v. Rokita*, 147 F.4th 720, 734 (7th Cir. 2025) (taking same approach); *United States v. Lierman*, 151 F.4th 530, 543 (4th Cir. 2025) (same).

## CONCLUSION

The Court should deny rehearing en banc.

Appellate Case: 24-2263     Page: 20     Date Filed: 12/17/2025 Entry ID: 5589403

DATED: December 17, 2025          Respectfully submitted,

*/s/ Emma Winger*
Emma Winger
Michelle Lapointe
Suchita Mathur
AMERICAN IMMIGRATION COUNCIL
2001 L Street N.W., Suite 500
Washington, DC 20036
Phone: (202) 507-7512
ewinger@immcouncil.org;
mlapointe@immcouncil.org
smathur@immcouncil.org

Rita Bettis Austen, AT0011558
Shefali Aurora, AT0012874
Thomas Story, AT0013130
ACLU of Iowa Foundation Inc.
505 Fifth Avenue, Ste. 808
Des Moines, IA 50309-2317
Phone: (515) 243-3988
Fax: (515) 243-8506
rita.bettis@aclu-ia.org
shefali.aurora@aclu-ia.org
thomas.story@aclu-ia.org

Spencer Amdur
Cody Wofsy
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-0770
F: (415) 395-0950
samdur@aclu.org
cwofsy@aclu.org

Anand Balakrishnan
Grace Choi
Noor Zafar

17

Omar Jadwat
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
abalakrishnan@aclu.org
gchoi@aclu.org
nzafar@aclu.org
ojadwat@aclu.org

*For Plaintiffs Iowa Migrant Movement for Justice, Jane Doe, Elizabeth Roe*

Appellate Case: 24-2263    Page: 22    Date Filed: 12/17/2025 Entry ID: 5589403

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), Fed. R. App. P. 40, Local R. 25A, and Local R. 35A, I certify the following:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 40(d) because it contains 3,815 words, excluding those parts exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because the brief has been prepared in Times New Roman 14-point font using Microsoft Word for Microsoft Office 365.

3.      This brief complies with the electronic filing requirements of Local R. 25A because the text of the electronic brief is identical to the text of the paper copies and because the electronic version of this brief has been scanned for viruses and no viruses were detected.

December 17, 2025

*/s/ Emma Winger*
Emma Winger
American Immigration Council
2001 L Street NW, Suite 500
Washington, DC 20036
Phone: (202) 507-7512
ewinger@immcouncil.org

Appellate Case: 24-2263      Page: 23      Date Filed: 12/17/2025 Entry ID: 5589403

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed with the Clerk using the appellate

CM/ECF system on December 17, 2025. All counsel of record are registered

CM/ECF users, and service will be accomplished by the CM/ECF system.


December 17, 2025

*/s/ Emma Winger*
Emma Winger
American Immigration Council
2001 L Street NW, Suite 500
Washington, DC 20036
Phone: (202) 507-7512
ewinger@immcouncil.org